United States Court of Appeals,

Fifth Circuit.

No. 94-40506.

SIERRA CLUB, et al., Plaintiffs-Appellees,

v.

Dan GLICKMAN, in his official capacity as Secretary of
Agriculture, et al., Defendants-Appellants.

Oct. 20, 1995.

Appeal from the United States District Court for the Eastern
District of Texas.

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

The United States Forest Service (hereinafter "Forest
Service") appeals the district court's Superseding Order of March
21, 1994.[1]  Therein, the district court concluded that the Forest
Service's Interim Standards and Guidelines for the Protection and
Management of Red-Cockaded Woodpecker Habitat Within 3/4 Mile of
Colony Sites (hereinafter "Interim Guidelines") violated the
Endangered Species Act and therefore denied the Forest Service's
Motion to Approve Plan.  Intervenors, Texas Forestry Association
and Southern Timber Purchasers Council, submitted additional
briefing on behalf of the Forest Service.  We vacate the district
court's order denying the Forest Service's motion and remand for
reconsideration of the Interim Guidelines under the arbitrary and

---

[1]The Superseding Order of March 21, 1994 superseded the
district court's Order of March 15, 1994.  The changes to the
March 15, 1994 Order reflected in the Superseding Order are
merely technical, not substantive.

1

capricious standard of review.

## I. History[2]

The Forest Service, an agency of the Department of Agriculture, is charged with the management of the national forests in East Texas.[3] The Sierra Club, The Wilderness Society, and the Texas Department of Natural Resources ("TCONR") (hereinafter "Plaintiffs") first challenged the Forest Service's discharge of this responsibility on April 17, 1985, when Plaintiffs sued to contest the Forest Service's policy of cutting trees in the Texas wilderness to control pine beetle infestation. The nature of the litigation changed dramatically, however, in late 1987 when Forest Service scientists documented a drastic decline in the number of active red-cockaded woodpecker ("RCW") colonies in these national forests. The RCW is a listed endangered species. *See* 50 C.F.R. § 17.11 (1994).

TCONR amended its complaint on October 22, 1987, to allege, *inter alia,* that the Forest Service's timber management policies harmed the RCW in violation of §§ 7 and 9 of the Endangered Species Act ("ESA"). 16 U.S.C.A. §§ 1536(a)(2) and 1538(a)(1)(B).[4] TCONR

---

[2]The majority of this discussion is a cutting and pasting of the relevant information from our opinion in *Sierra Club v. Yeutter,* 926 F.2d 429 (5th Cir.1991), wherein we first visited this case.

[3]The pertinent national forests are the Sam Houston National Forest, the Angelina National Forest, the Davy Crockett National Forest, and the Sabine National Forest.

[4]Section 7 of the ESA, 16 U.S.C.A. § 1536(a)(2), provides:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary [of the

2

sought a temporary restraining order halting all even-aged timber harvesting in the Texas national forests, but this request was denied. *Sierra Club v. Block,* 694 F.Supp. 1255 (E.D.Tex.1987). On January 19, 1988, the Sierra Club and The Wilderness Society filed an amended complaint raising claims similar to those raised by TCONR in its amended complaint and seeking permanent injunctive relief.

The district court conducted a four-day trial concerning the plea for a permanent injunction and, in a memorandum opinion and order of June 17, 1988, held the Forest Service's current management techniques were in violation of §§ 7 and 9 of the ESA. *Sierra Club v. Lyng,* 694 F.Supp. 1260 (E.D.Tex.1988). Concluding that the Forest Service was "harming" and thus "taking" a protected species in violation of the ESA, the district court ordered the

---

Interior], insure that any agency action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary ... to be critical....

The relevant portion of § 9 of the ESA, 16 U.S.C.A. § 1538, provides:

(a) Generally

(1) Except as provided in sections 1535(g)(2) and 1539 of this title, with respect to any endangered species of fish or wildlife listed pursuant to section 1533 of this title it is unlawful for any person subject to the jurisdiction of the United States to—

(B) take any such species within the United States or the territorial sea of the United States....

3

Forest Service to promulgate within sixty days a comprehensive plan to maximize the probability of survival of the RCW in the Texas national forests. Further, the district court enjoined all even-aged lumbering in these forests within 1,200 meters of identified active and inactive RCW colony sites and imposed several restrictions upon any future proposed timber management plan.

In August 1988, the Forest Service submitted a comprehensive timber management plan that the district court found did not fully comply with the dictates of its June 17, 1988 order. By an order entered October 21, 1988, the district court rejected significant portions of this plan and gave the Forest Service another sixty days to submit a second comprehensive plan.

The Forest Service appealed the June 17 and October 21, 1988 orders challenging the standard of review employed by the district court in considering the Plaintiffs' ESA claims. We found merit in the Forest Service's contention that claims of violation of the ESA by agencies of the federal government are generally reviewed under the arbitrary and capricious standard of the Administrative Procedure Act ("APA"). *Sierra Club v. Yeutter,* 926 F.2d 429 (5th Cir.1991). As to the contested orders, we affirmed "to the extent that they prohibit or condition action by [the Forest Service] *pending* their formulation ... of a proper timber management plan," but vacated in "so far as [they] mandate in advance the specific features such a plan must contain." *Id.* at 440. Finally, we remanded the matter for the district court "to review the [Forest Service's] current plan, applying the arbitrary and capricious

4

standard, for compliance with the ESA in reference to the RCW and its habitat." *Id.*

While the matter was awaiting reconsideration on remand, the Forest Service, on June 17, 1992, filed a Motion to Approve Plan, wherein the Forest Service requested that the district court approve the Interim Guidelines as applied to the Texas national forests. Additionally, the Forest Service requested that the district court lift the existing injunction upon approval of the Interim Guidelines. The district court, despite our mandate in *Yeutter,* reviewed the Interim Guidelines for compliance with the ESA under a *de novo* standard and held they violated § 9. Accordingly, the district court denied the Forest Service's motion, and the injunction remains in effect. The Forest Service timely appealed. On appeal, two issues confront us: (1) whether the order of the district court was an interlocutory order continuing or refusing to dissolve an injunction such that we have appellate jurisdiction of this case under 28 U.S.C.A. § 1292(a)(1); and (2) whether federal agency action alleged to violate the ESA is subject to judicial review under the APA's arbitrary and capricious standard.

## II. Appellate Jurisdiction

The Forest Service alleges jurisdiction for this appeal pursuant to 28 U.S.C.A. § 1292(a)(1). Section 1292 states, in relevant part:

> (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

5

> (1) Interlocutory orders of the district courts of the United States ..., or of the judges thereof, granting, *continuing,* modifying, refusing or dissolving injunctions, or *refusing to dissolve or modify injunctions ....*

(Emphasis added.). Plaintiffs, however, contest our appellate jurisdiction and argue the district court neither refused to dissolve nor continued the existing injunction. More particularly, Plaintiffs contend the Forest Service did not request in its motion that the injunction be lifted.

Because § 1292 is intended to carve out limited exceptions to the general rule that only final judgments of federal district courts are reviewable on appeal, the statute is construed narrowly. *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). Thus, only when the interlocutory order of the district court specifically and explicitly grants or denies an injunction is such order immediately appealable under § 1292(a)(1). *Justin Indus., Inc. v. Choctaw Securities, L.P.,* 920 F.2d 262, 265 & n. 2 (5th Cir.1990); *Atwood Turnkey Drilling, Inc. v. International Underwater Contractors,* 875 F.2d 1174, 1176 (5th Cir.1989), *cert. denied sub nom. Petroleo Brasileiro, S.A. v. Atwood Turnkey Drilling, Inc.,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990). If the district court's order is not explicit, but merely has the practical effect of granting or denying injunctive relief, § 1292(a)(1) permits an appeal provided the litigant can further establish "that [the] interlocutory order of the district court might have a "serious, perhaps irreparable, consequence,' and that the order can be "effectually challenged' only by immediate appeal." *Carson,* 450 U.S. at 84, 101 S.Ct. at

6

996 (quoting *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1951)). *See also EEOC v. Kerrville Bus Co.,* 925 F.2d 129, 132 (5th Cir.1991). Thus, the question is whether the district court's order explicitly continued or refused to dissolve the existing injunction. An affirmative answer halts our inquiry and establishes our jurisdiction.

Despite Plaintiffs' contention that the Forest Service did not request the injunction be lifted in its Motion to Approve Plan, the record on appeal reveals that the fate of the injunction was unquestionably before the district court. In considering the Forest Service's motion, the district court noted:

> Before the Court are: ... Preliminary Opposition of Sierra Club and the Wilderness Society to the Forest Service's Motion to Approve its Woodpecker Management Plan [Preliminary Opposition]; ... Plaintiff, TCONR's Opposition to Defendants' Proposed Plan and to Defendants' Reply Memo [TCONR's Opposition]; ... and Defendants' Written Rebuttal.

1 R. at 88-89. The Preliminary Opposition joined in by all Plaintiffs states: "The Forest Service has now proposed to lift this Court's injunction that has governed management practices in Red-Cockaded Woodpecker habitat on the Texas National Forests for four years." 4 R. at 860. Further, TCONR's Opposition states: "TCONR request[s] [sic] that the Court ... (3) continue in the interim, the injunction against even-aged logging in Red-cockaded woodpecker habitat, except as to the requirement to maintain 40 square feet per acre of the oldest trees...." 3 R. at 653. Finally, Defendants' Written Rebuttal provides: "In sum, under the correct standard of review—the deferential arbitrary and capricious standard—the Interim Standards and Guidelines should be approved by

7

this Court and the injunctions lifted." 2 R. at 122. Thus, all parties recognized that the corollary of the district court's ruling on the Forest Service's motion would be the continuance or dissolution of the injunction.

Additionally, in rendering its order, the district court stated:

> In short: the defendants ... have proposed that the Court lift its injunction that has governed management practices in Red-Cockaded Woodpecker habitat in the Texas national forests for four years. However, the currently-proffered Plan is but a proposal to return to the very same timber management practices this Court has reviewed and rejected on three separate occasions.

1 R. at 89-90. Notwithstanding that following this introductory remark the order focuses on the legal sufficiency of the Interim Guidelines under § 9 of the ESA and never again mentions the injunction or the effect of the refusal to accept the Interim Guidelines on the injunction, this language evidences the district court's understanding that the necessary result of its denial of the Forest Service's motion was to continue or to refuse to dissolve the existing injunction.

For the foregoing reasons, we conclude that the district court's March 21, 1994 Superseding Order explicitly continued or refused to dissolve the existing injunction against even-aged timber harvesting in the Texas national forests by the Forest Service. Accordingly, we have jurisdiction to maintain the Forest Service's appeal of the order under § 1292(a)(1).

### III. Standard of Review

Having resolved the jurisdiction question, we now focus our

8

attention on the critical issue in this dispute: What is the appropriate standard by which the district court is to review the Forest Service's proposed timber management plans for compliance with §§ 7 and 9 of the Endangered Species Act ("ESA")? In *Yeutter,* we issued a plain, concise mandate to the district court: "The cause is remanded to the district court to review the USFS's current plan, applying the arbitrary and capricious standard, *for compliance with the ESA* in reference to the RCW and its habitat." 926 F.2d at 440 (emphasis added). Our opinion drew no distinction between review of claims under § 7 as opposed to § 9. Nonetheless, the order issued by the district court on remand did, in fact, make such a distinction. And in this court Plaintiffs argue that such a distinction is warranted. To reiterate our holding in *Yeutter,* the appropriate standard of review of federal administrative agency action under both § 7 and § 9 of the ESA is the arbitrary and capricious standard prescribed by the Administrative Procedure Act ("APA"), 5 U.S.C.A. § 706(2)(A).[5]

*A. Section 7*

Because it denied the Forest Service's motion based on a finding that the Interim Guidelines violated § 9, the district

---

[5]Our holding in this respect comports with the views of other jurisdictions confronted with this issue. *See National Audubon Society v. Hester,* 801 F.2d 405 (D.C.Cir.1986); *Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson,* 685 F.2d 678 (D.C.Cir.1982); *Sierra Club v. Froehlke,* 534 F.2d 1289 (8th Cir.1976); *Resources Ltd. v. Robertson,* 35 F.3d 1300 (9th Cir.1993), *as amended on denial of rehearing* (1994); *Pyramid Lake Paiute Tribe of Indians v. U.S. Dept. of Navy,* 898 F.2d 1410 (9th Cir.1990); *Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976 (9th Cir.1985); *Environmental Coalition of Broward County, Inc. v. Myers,* 831 F.2d 984 (11th Cir.1987).

court did not review the Interim Guidelines with respect to § 7. Nonetheless, the district court acknowledged that "judicial review allowed under § 7 ... is to take place under the Administrative Procedure Act's "arbitrary and capricious' standard." 1 R. at 93. In this respect the district court complied with our earlier dictate. *See Yeutter,* 926 F.2d at 439. Thus, in reviewing the Forest Service's Interim Guidelines for compliance with § 7, the district court must employ the APA's arbitrary and capricious standard. *See, e.g., National Wildlife Federation v. Coleman,* 529 F.2d 359, 371-72 (5th Cir.), *cert. denied sub nom. Boteler v. National Wildlife Federation,* 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976); *Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson,* 685 F.2d 678 (D.C.Cir.1982).

*B. Section 9*

As to Plaintiffs' § 9 claim, the district court stated: "The *de novo* review of the ESA § 9 "takings' claims as approved by the Fifth Circuit in *Sierra Club v. Yeutter,* 926 F.2d 429, 438 (5th Cir.1991), should continue through the remedy phase of this case." 1 R. at 92. The district court then proceeded to conduct *de novo* review of the Interim Guidelines, and in doing so intimated this standard was applicable to review of administrative agency action under § 9 generally.

In *Yeutter,* we addressed the Forest Service's contention that the district court should have used the arbitrary and capricious standard in considering the § 9 claim asserted against the plan then under scrutiny by noting that in those district court

10

proceedings "the government's trial attorney repeatedly invited the [district] court to try the section 9 claim de novo." *Yeutter,* 926 F.2d at 438.  Accordingly, we concluded:

> Because it is a "cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by [a] party," we are not inclined to rule in the government's favor when, as here, it articulated to the court that it sought review under the standard it now challenges.

*Id.* (footnote and citation omitted).  Thus, as to the particular plan before the district court in *Sierra Club v. Lyng,* 694 F.Supp. 1260 (E.D.Tex.1988), we held *de novo* review to be appropriate, but only because the proponent of the plan had argued for such standard and should not be allowed to complain about the adverse result reached under that standard.

At this point, we emphasize that the Forest Service asked the district court on remand to direct its attention to the Interim Guidelines in lieu of the plan previously reviewed in *Lyng,* as the Interim Guidelines represented the Forest Service's current policy on timber harvesting in the Texas national forests.[6]  4 R. 872-82.

---

[6]After the district court's order of June 17, 1988 (i.e., *Sierra Club v. Lyng,* 694 F.Supp. 1260 (E.D.Tex.1988)), the Forest Service submitted its first comprehensive plan.  This plan was reviewed and partially rejected by the district court on October 21, 1988, and the Forest Service was given an additional sixty days to submit a revised plan.  On December 19, 1988, pursuant to the October 21, 1988 order, the Forest Service submitted a second comprehensive plan.  Subsequently, the Forest Service appealed the June 17, and October 21, 1988 orders.

On appeal, we concluded that the district court had employed the wrong standard of review in analyzing the Forest Service's first comprehensive plan and ordered the district court on remand to reconsider that plan under the arbitrary and capricious standard. *Sierra Club v. Yeutter,* 926 F.2d 429 (5th Cir.1991).  While the first comprehensive

11

Further, unlike in *Lyng,* the Forest Service argued to the district court for the application of the arbitrary and capricious standard in reviewing the Interim Guidelines. *Id. See also* 4 R. at 684-90; 2 R. at 122. Consequently, our holding in *Yeutter* as to *de novo* review under § 9 was restricted to the plan considered by the district court in *Lyng,* and was not to extend beyond those proceedings.

The ESA permits judicial review of agency action but does not establish the standard to be applied in conducting such review. *See, e.g.,* 16 U.S.C.A. §§ 1536(n), 1540(g). When a statute authorizes judicial review of agency action without providing standards for that review, we look to the APA, 5 U.S.C.A. § 701 *et seq.,* for guidance. *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 904 (5th Cir.1983); *Peterson,* 685 F.2d at 685. Section 706(2)(A) of the APA provides:

The reviewing court shall—

\*   \*   \*   \*   \*   \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

---

plan awaited reconsideration on remand, and before the district court ever addressed the second comprehensive plan, the Forest Service filed its Motion to Approve Plan on June 17, 1992. Therein, the Forest Service asked the district court to disregard all other plans and to examine and approve the Interim Guidelines, as they represented the Forest Service's current policy on timber harvesting in the Texas national forests. Thus, the district court order giving rise to this appeal focused on a new plan different from the one at issue in *Lyng* and *Yeutter.*

Thus, the appropriate standard of review of agency action under the ESA, including § 9, is whether the action was arbitrary and capricious.

Note that the APA does provide a *de novo* standard of review. 5 U.S.C.A. § 706(2)(F). *De novo* review, however, is authorized under § 706(2)(F) in only two circumstances:

> First, such *de novo* review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). *See also Camp v. Pitts,* 411 U.S. 138, 141-42, 93 S.Ct. 1241, 1243-44, 36 L.Ed.2d 106 (1973); *Avoyelles Sportsmen's League, Inc.,* 715 F.2d at 905. The development of a timber management plan is not adjudicatory in nature, and the Plaintiffs did not bring this suit to *enforce* any action of the Forest Service. Thus, *de novo* review is inapplicable to the facts of this case.

## IV. Conclusion

Having reviewed the district court's Superseding Order of March 21, 1994 in light of the foregoing discussion, we conclude that the district court misunderstood our directive in *Yeutter* and improperly reviewed the Forest Service's Interim Guidelines for compliance with ESA § 9 under a *de novo* standard. Therefore, the district court order is vacated, and the cause is once again remanded to the district court to review the Forest Service's Interim Guidelines for compliance with the ESA, both §§ 7 and 9,

13

applying the arbitrary and capricious standard of review.[7]  Under this standard, administrative action is upheld if the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made.  *See Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983) (citing *Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824 (1971)); *Chemical Mfrs. Ass'n v. U.S. Envtl. Protection Agency,* 870 F.2d 177, 199 (5th Cir.1989), *cert. denied sub nom. PPG Indus., Inc. v. U.S. Envtl. Protection Agency,* 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990).  Although the district court's inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.  *Volpe,* 401 U.S. at 416, 91 S.Ct. at 824. "If the agency produces a plan that is legally sufficient, when reviewed under the arbitrary and capricious standard, the district court is not to substitute its judgment for that of the agency as to which particular features might be most desirable or efficacious."  *Yeutter,* 926 F.2d at 440.  Pending review of the Interim Guidelines by the district court under the appropriate

---

[7]While this case was pending before us, the Forest Service's Southern Region issued a Record of Decision ("ROD") dated June 21, 1995, adopting its final strategy to recover the RCW.  This ROD affects the Southern Regional Guide and land and resource management plans ("LRMPs") for the national forests in Alabama, Georgia, Tennessee, Kentucky, North Carolina, South Carolina, Florida, Louisiana, Mississippi, Arkansas, and Texas.  Although this ROD replaces the Interim Guidelines throughout the Southern Region, even after the new LRMP for the Texas national forests and grasslands is adopted the final strategy can be implemented only partially due to the continuing effect of the existing injunction.

standard of review, the injunction issued in *Lyng,* as subsequently modified by the October 21, 1988 order, remains in effect.

VACATED;  cause REMANDED.

\*   \*   \*   \*   \*   \*