AMERICAN GROWERS INSURANCE COMPANY, Plaintiff,

v.

FEDERAL CROP INSURANCE CORPORATION, a Corporation within the United States Department of Agriculture, Risk Management Agency, and agency of and within the United States Department of Agriculture, and Phyllis W. Honor, Acting Manager of the Federal Crop Insurance Corporation and Acting Administrator of Risk Management Agency, Defendants.

No. CIV.1–01–CV–10059.

United States District Court, S.D. Iowa, Western Division.

June 26, 2002.

Patrick B. Griffin, Kutak Rock LLP, Omaha, NE, Frank W. Pechacek, Jr., Bruce B. Green, Willson & Pechacek PLC, Council Bluffs, IA, for plaintiff.

Gary L. Hayward, Asst. U.S. Atty., Des Moines, IA, Kevin W. McArdle, U.S. Dept.

of Justice, Civil Division, Washington, DC, for defendants.

## ORDER

LONGSTAFF, Chief Judge.

Before the Court is defendants' motion to dismiss filed February 7, 2002. Plaintiff filed a resistance on March 15. No reply brief was filed, but on May 17 defendant filed a supplemental brief in support of its motion. Thereafter, plaintiff filed a supplemental resistance on May 28 and a June 18 supplement to their supplemental resistance.

## I. BACKGROUND

Plaintiff is a Nebraska corporation with its principal place of business in Council Bluffs, Iowa. It provides farmers with multiple peril crop insurance ("MPCI"). The Federal Crop Insurance Corporation ("FCIC"), defendant, created pursuant to 7 U.S.C. section 1503, is organized within the United States Department of Agriculture ("USDA"), and regulates the crop insurance industry. The other defendants are the Risk Management Agency ("RMA"), an entity created in 1996 pursuant to 7 U.S.C. section 6933 to supervise the FCIC, and Phyliss Honor, who is both the acting manager of the FCIC and acting administrator of the RMA.

The FCIC provides approved insurance providers, such as American Growers, with crop reinsurance programs. American Growers entered into a Standard Reinsurance Agreement ("SRA") with the FCIC in 1995 that was effective for the 1996 crop year.[1] Through this agreement, the FCIC supported American Growers' efforts to sell and provide farmers with MPCI. It was a cooperative financial agreement, and was subject to the terms of 7 U.S.C. sections 1501 *et seq.* and governing federal regulations at 7 C.F.R. part 400.[2]

American Growers issued its policies to farmers for the 1996 crop year based on conditions established by the FCIC. On December 7, 1995, the FCIC adopted some rules and regulations that changed the conditions for "prevented planting coverage" under the MPCI polices that American Growers had issued for the 1996 crop year. American Growers asserts that these new conditions established by the FCIC were not based on actuarially sufficient and sound determinations, and that the FCIC failed to adjust its coverage and indemnification rates in an actuarial sound fashion. American Growers then experienced increased costs and losses for the 1996 crop year after paying claims made by farmers because of the changes made by the FCIC.

After its demands for payment from the FCIC were denied, American Growers filed an appeal with the Board of Contract Appeals ("the Board") on September 25, 1998, and naming the FCIC as respondent. On June 15, 2000, a three member panel of administrative judges issued a decision granting the FCIC's motion for summary judgment. Thereafter, American Growers filed its complaint with this Court on November 27, 2001 seeking damages rather than asking for a review of the decision of the Board. In Count I of the complaint, American Growers alleges a breach of the 1996 SRA between American Growers and FCIC. Count II alleges a violation of the Federal Crop Insurance Act, 7 U.S.C. sections 1501 *et seq.;* and Count III asserts defendants violated "American Growers'

---

**1.** The 1996 crop reinsurance year ran from July 1, 1995 through June 30, 1996.

**2.** For an excellent discussion of the history of the Federal Crop Insurance Act of 1938, sub-

sequent amendments, and the program in general, see *Wiley v. Glickman,* 1999 WL 33283312 (D.N.D.1999).

contract rights, and effected a deprivation of American Growers' property without due process of law, and/or effected a taking of American Grower's property without just compensation, in violation of the Fifth Amendment to the United States Constitution." *See* Complaint at ¶ 55.

## II. APPLICABLE LAW & DISCUSSION

Defendants argue that their motion to dismiss should be granted pursuant to Federal Rule of Civil Procedure 12(b)(1) as this Court lacks subject matter jurisdiction to hear some claims against certain defendants, and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted with respect to the remaining matters. In its supplemental resistance, American Growers indicates that it "intends" to voluntarily dismiss Phyllis Honor as a defendant in this action. *See* Plaintiff's Supplemental Resistance to Motion to Dismiss, at 2 n. 1. Based on this assertion by plaintiff, the Court will grant defendants' motion insofar as it seeks to dismiss Honor from this action.

### A. Standard of Review

When considering a motion to dismiss, a court will accept as true all factual allegations in the complaint. *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 (8th Cir.1996) (citing *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163–65, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). A motion to dismiss will be granted "only if no set of facts would entitle the plaintiff to relief.' " *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Whether American Growers May File this Action for Damages Against the FCIC

■ In this case, American Growers previously filed a claim of breach of the SRA by the FCIC with the Board of Contract Appeals. That administrative claim was denied. American Growers does not seek to have this Court review that administrative decision, but rather seek damages and assert that the decision of the Board has no effect on this Court's ability to hear its claims. Plaintiff relies on the Federal Crop Insurance Act ("FCIA") statement that the FCIC

may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against [the FCIC] or its property. The district courts of the United States, including the district courts of the District of Columbia and of any territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against [the FCIC].... Any suit against [the FCIC] shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.

7 U.S.C. § 1506(d). While it is clear from the face of the statute that the FCIC may be sued in this Court, and that this Court shall have "exclusive original jurisdiction" of such matters, the "sue and be sued" language does not address the effect of a prior administrative decision or whether administrative remedies must be exhausted. *Id.*

In 1994, as a part of a congressional act on the reorganization of the Department of Agriculture, the issue of exhaustion of administrative appeals in this context was addressed. That legislation provided that:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary;

(2) the Department; or

(3) an agency, office, officer or employee of the Department.

7 U.S.C. § 6912(e). The administrative appeal procedures, which section 6912(e) states "shall" be exhausted, were established by the Secretary and are set forth in 7 C.F.R. section 400.169. The procedure requires a claimant like American Growers to request a final administrative determination regarding a disputed matter, which must initially be decided by the Deputy Administrator of Insurance Services. *See* 7 C.F.R. § 400.169(a). The decision then becomes an appealable final administrative determination of the FCIC and may be appealed to the Board of Contract Appeals. *See* 7 C.F.R. § 400.169(d). This is the administrative procedure that was followed by American Growers in this case, and the Board made a decision adverse to American Growers' position.

American Growers now asserts that section 1506(d) allows them to file the current action in this Court, not as an appeal of the administrative decision, but rather as an original action. American Growers appears to assert that it was not required to exhaust its administrative remedies, and may file this action without this Court considering the decision of the Board or reviewing the administrative record. This Court disagrees.

The plain language of section 6912(e) states that *notwithstanding* any other provision, which would include section 1506, administrative remedies have to be exhausted before an action in this Court can be heard. This requirement is not in conflict with the grant of "exclusive original jurisdiction" to the United States district courts of matters brought against the FCIC. This Court's original jurisdiction is not divested by the administrative exhaustion requirements, and the two statutes are not in conflict. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (finding court divested of jurisdiction only when statute explaining exhaustion of administrative remedies contained "sweeping and direct" statutory language that went beyond a requirement of administrative exhaustion; in *Weinberger* the statute at issue was "sweeping and direct" as it instructed claims at issue could not be brought pursuant to 28 U.S.C. section 1331). The Court finds that when Congress enacted section 6912(e), it did so against the backdrop of principles of collateral estoppel, res judicata, and administrative estoppel. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107–108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (holding that collateral estoppel and res judicata generally apply to the final determinations of administrative bodies, and that this policy is based on the "sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise"). When read together, sections 6912 and 1506 dictate that American Growers had to go through the administrative process, thereby exhausting their remedies, before filing in this Court. Having completed that process, American Growers may not circumvent what happened at the administrative level.

The Court recognizes that section 1506 provides for an "exclusive original jurisdiction" in the district court of the United States. However, section 6912 and its requirement that administrative proceedings "shall" be held cannot be ignored. "[I]n cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, [the Supreme Court] has held that consideration is to be confined to the administrative record and that no de novo

proceeding may be held." *United States v. Carlo Bianchi & Co., Inc.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). When section 1506 and 6912 are read together, the Court finds Congress intended for judicial review of plaintiff's claims in an administrative review context.

Therefore, the Court finds American Growers may not maintain a claim for damages under Count I of its complaint, as it is clear that the administrative decision before the Board of Contract Appeals addressed the breach of contract claim. However, Count II asserts an alleged violation of a federal statute, and it is unclear whether this matter was before the Board or could have been brought before the Board. As this is a motion to dismiss, matters outside of the pleadings—such as the Board's written decision, submitted by defendants as an appendix to their motion—may not be considered by the Court. *See, e.g., Jensen v. Klecker,* 599 F.2d 243, 244 (8th Cir.1979) (reversing district court's decision to grant a motion to dismiss as the district court had considered matters outside the pleadings). Additionally, the parties have not focused on the issues of whether this claim was presented to the Board, should have been presented to the Board, whether the Board had authority to hear such claims, and whether this claim in particular should be limited to judicial review on the administrative record. The Court finds this claim appropriately reserved for a ruling on a summary judgment motion.

C. Whether Plaintiff Can Maintain a Breach of Contract Claim in this Court

■ Defendants assert that this Court may not hear plaintiff's breach of contract claim and cite to the Tucker Acts. *See* 28 U.S.C. §§ 1346(a)(2) and 1491. These acts discuss the jurisdiction of the United States Court of Federal Claims. The district courts have original jurisdiction, concurrent with the claims court, of any civil action against the United States based in contract that does not exceed $10,000. *See* 28 U.S.C. § 1346(a)(2). However, district courts do not have jurisdiction "of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases ... which are subject to section s 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978." *Id.* The Contract Disputes Act ("CDA"), 41 U.S.C. section 601 *et seq.,* applies to any express or implied contract entered into by an executive agency for

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair, maintenance of real property; or

(4) the disposal of personal property.

41 U.S.C. § 602(a). None of these conditions apply in this case, and the CDA does not apply. The contract at issue in this case sets the parameters and conditions of a federal program that primarily benefits farmers, but also benefits insurance companies and provides reimbursement and support.

Despite the Tucker Acts, 7 U.S.C. section 1506(d) clearly states that this court "shall have" jurisdiction of claims brought against the FCIC "without regard to the amount in controversy, of all suits brought by or against [the FCIC]." This Court finds that as a matter of statutory interpretation, section 1506 clearly grants it jurisdiction of a breach of contract claim against the FCIC, and that such a claim does not have to be brought in the federal court of claims.

Defendants assert that if plaintiff had properly filed a claim to have this Court review the administrative record in this

case, then 41 U.S.C. section 321, the Wunderlich Act, would provide the relevant scope of review. However, defendants rely on the Board's decision and the SRA itself in reaching this assertion. *See* Defendants' Supplemental Brief at 16. Again, this Court will not consider matters outside the pleadings and will not make an affirmative determination at this time regarding the exact scope of review of the Board's decision. However, it will grant plaintiff leave to file a breach of contract claim that seeks judicial review of the Board's adverse decision.

### D. Whether the RMA May Be Sued

■ "Congress ... established the RMA in 1996 and placed FCIC under the authority of that agency." *Wiley*, 1999 WL 33283312 at *2. At least one court has stated that the RMA is the federal agency formerly known as the FCIC. *See Nobles v. Rural Comm. Ins. Servs.*, 122 F.Supp.2d 1290, 1292 (M.D.Ala.2000). Another court has stated that the FCIC is the same entity as the RMA. *See United States v. Huber*, 2002 WL 257851 at *4 (D.N.D. January 3, 2002). Section 1506(d) clearly states that the FCIC may be sued, and section 6912 provides for administrative remedies that are to be exhausted. The Court finds that the RMA has supervisory authority over the FCIC, and the Court finds the provisions of sections 1506 and 6912 apply equally to it.

### E. Whether the Complaint States a Constitutional Takings Claim for Which Relief Can Be Granted

■ Defendants assert that plaintiff may not maintain a constitutional takings claim, under the Fifth Amendment to the United States Constitution, that is premised on an alleged breach of a contract it held with the government.

Courts have cautioned against the "comingling [of] takings compensation and contract damages," and it is not preferred under the law to have both claims maintained in the same lawsuit. *Hughes Comm. Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001); *see also Schlake v. Beatrice Production Credit Assoc.*, 596 F.2d 278, 281 (8th Cir.1979) (stating that "a constitutional violation [is not] committed when a governmental agency breaches a contract it has entered into in the commercial world"). " '[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.' " *Id.* (quoting *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) (other citation omitted)). However, an underpinning of why takings claims normally do not arise under government contracts is because the government is acting in a "commercial or proprietary capacity" and not in its sovereign capacity. *Id.* For example, in *Hughes Communications Galaxy*, the contract at issue was between a private company and the National Aeronautics and Space Administration ("NASA"), and the plaintiff had entered the contract in order to have its satellites launched into space by NASA's space shuttle. NASA did not launch the satellites, and the plaintiff company sought damages for the breach of the contract. *Id.* at 1064–65. Clearly the government sought to make money from this transaction, and entered into it in its commercial or proprietary capacity.

■ In this case, the government did not enter into the SRA with American Growers in a proprietary or commercial role. The federal crop reinsurance program is designed to help farmers procure insurance and defer some of their risk of loss by supporting insurance companies that offer policies to farmers. Plaintiff

relies on *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), for the proposition that it may maintain Count III of its complaint. In that case the Supreme Court addressed the viability of claims arising from war risk insurance policies. The claimants were veterans or their family members who sought payment on these insurance policies. During World War I, the government issued such policies, but then Congress passed the Economy Act, 38 U.S.C. section 701 *et seq.*, in 1933 and withdrew the consent of the United States to be sued under the war risk insurance policies. *Id.* at 575, 54 S.Ct. 840. The Court in *Lynch* found that the insurance policies were contracts of the United States that were not entered into for a business purpose but rather were entered into for "a benevolent purpose, [and] heavy burdens were assumed by the government." *Id.* at 576, 54 S.Ct. 840. However, the Court went on to state that the war risk insurance policies were more than privileges or gratuities granted to the insureds, and were "property and create[d] vested rights" in the policy holders and beneficiaries. *Id.* at 577, 54 S.Ct. 840. The *Lynch* Court held that Congress could not relieve the government of liability by passing a new law not allowing the government to be sued on the war risk insurance policies. *Id.* at 589, 54 S.Ct. 840.

*Lynch* involved a situation where a congressional act removed a cause of action based on a contract right. While the *Lynch* Court discussed the case as a takings case, its decision "turned on statutory interpretation and the doctrine of sovereign immunity rather than takings law." *Coast Fed. Bank, FSB v. United States*, 48 Fed.Cl. 402, 444 (2000) (discussing *Lynch* in detail). Furthermore, courts recognize takings claims in cases involving breach of contract claims against the government only if "the scope of the takings claim differed from that of the contract claim." *Id.* at 443 (citing *Integrated Logistics Support Sys. Int'l, Inc. v. United States*, 42 Fed.Cl. 30, 34 (1998)) (involving takings claim where rights at issue were not contemplated by the parties in their contractual agreement).

In this case, plaintiff alleges that a regulatory act by defendants changed the nature of the contract at issue, thereby causing plaintiff to pay more out in claims to farmers. The regulation at issue was a part of a contract—the SRA—and therefore American Growers' takings claim in this case is identical to the subject of the contract at issue. Thus, despite the fact that the FCIC and/or the RMA did not enter into the SRA for a commercial or proprietary purpose, the Court finds American Growers' interests are protected by its ability to maintain a breach of contract claim. Therefore, the Court will not allow plaintiff to comingle its breach of contract claim with a takings claim in this suit as the subject matter of both claims is identical.

## III. CONCLUSION

Defendant Phyllis Honor's motion to dismiss is granted in its entirety. With respect to the other defendants, the FCIC and the RMA:

- Count I is dismissed as an action for damages may not be maintained where a duly authorized administrative body has already addressed the matter. Plaintiff is granted leave to file a claim that seeks judicial review of the Board's decision on its breach of contract claim. Plaintiff has thirty days from the date of this Order to amend its complaint in this manner.
- The motion to dismiss Count II is denied, as consideration of this claim would require the Court to consider matters outside the pleadings.
- Count III is dismissed as brought against both the FCIC and the RMA as

the subject matter of this claimed constitutional takings violation is identical to plaintiff's breach of contract claim.

IT IS SO ORDERED.