**RAIN & HAIL INSURANCE SERVICE, INC., an Iowa Corporation, and Rain & Hail, L.L.C., an Iowa Limited Liability Company, Plaintiffs,**

v.

**FEDERAL CROP INSURANCE CORP., A Corporation Within the United States Department of Agriculture, and Risk Management Agency, An Agency Within the United States Department of Agriculture, Defendants.**

Civil Action No. M–01–280.

United States District Court, S.D. Texas, McAllen Division.

Oct. 31, 2002.

Mark W. Walker, Walker & Twenhafel LLP, McAllen, TX, Frank W. Pechacek, Jr., Bruce B. Green, Willson & Pechacek PLC, Council Bluffs, IA, for Plaintiffs.

David Guerra, U.S. Attorneys Office, McAllen, TX, Mark A. Melnick, Kevin W. McArdle, U.S. Dept of Justice, Civil Div, Washington, DC, Michael Taylor Shelby, AUSA, Houston, TX, for Defendants.

## ORDER ON MOTION TO DISMISS

CRANE, District Judge.

### I. Background

Plaintiffs' claims arise out of the Federal Crop Insurance Corporation's (FCIC) and the Agriculture Board of Contract Appeals' (ABCA) determination to withhold reinsurance funds from Rain and Hail, who Defendants claim improperly paid over $1.5 million dollars in primary insurance to farmers in the Texas Coastal Bend area for cotton crop losses during the drought of 1996.

Plaintiffs Rain and Hail [1] provide multi-peril crop insurance (MPCI) to farmers. Defendant FCIC provides reinsurance to Plaintiffs, pursuant to a "Standard Reinsurance Agreement" (SRA) and in accordance with the Federal Crop Insurance Act, codified at 7 U.S.C. §§ 1501, *et seq.* The Risk Management Agency (RMA) supervises the FCIC and Plaintiffs allege that the RMA is actually a "successor agency" to the FCIC. Plaintiffs paid Texas cotton farmers over $1.5 million in insurance funds after a drought wiped out the cotton crops in 1996. Two years after

---

1. Pursuant to a corporate reorganization on May 1, 1996, Rain & Hail, LLC succeeded to the rights and obligations of Rain & Hail Insurance Service, Inc. Both are named plaintiffs in this case (Docket No. 24, First Amended Complaint at 4).

reinsuring these indemnity payments, the FCIC determined that Plaintiffs had improperly adjusted the crop losses and overpaid the farmers. Plaintiffs appealed the FCIC's decision to the ABCA, who upheld the FCIC's findings. Accordingly, the FCIC offset the $1.5 million Plaintiffs had paid to the farmers, along with an additional $722,291.83 in interest.

Plaintiffs then brought suit in federal court, alleging breach of the SRA, statutory violations, and a constitutional taking by the FCIC, RMA, and the United States. Plaintiffs, alternatively, request administrative review of the ABCA's decision, to the extent Plaintiffs do not have an original cause of action regarding matters already determined by the ABCA. Finally, Plaintiffs request declaratory relief against the FCIC, RMA, and the United States pursuant to 28 U.S.C. § 2201.

Defendants responded with a motion to dismiss arguing, in sum, the following points. First, Defendants assert that the district court lacks jurisdiction to hear Plaintiffs' claims against the RMA, ABCA, and the United States. Rather, such claims must be brought in the United States Court of Federal Claims, pursuant to 28 U.S.C. §§ 1346(a)(2) and 1491, which direct that suits against the United States in excess of $10,000 be brought in Federal Claims Court. Second, Defendants contend that the Plaintiffs failed to state a colorable takings claim against the United States. Third, they argue that Plaintiffs' claim for reimbursement of the interest amount offset by the FCIC is barred either by *res judicata* or failure to exhaust

the interest claim administratively. Finally, Defendants argue that the Plaintiffs are limited to this Court's administrative review of the claims brought before the ABCA.

During the initial August 13, 2002 hearing on the Defendants' motions to dismiss,[2] the Court entered an Order granting the dismissal of the ABCA as a party but denying dismissal of Plaintiffs' claims against the FCIC and RMA. Subsequently, in response to the Court's request for supplemental briefing on Plaintiffs' takings claim, Plaintiffs filed a "Third Supplemental Response to Defendants' Motion to Dismiss," in which they clarified that their takings claim seeks to recover Plaintiffs' own portion of indemnity payments and interest, offset by Defendants, that is not part of the reinsurance agreement. Defendants replied that Plaintiffs improperly allege a breach of contract claim under the guise of a takings claim; rather, Plaintiffs' claim is simply that Defendants offset too much money and a remedy exists for such calculation errors under the SRA.

Therefore, the following issues are ripe for determination by the Court:

1. Whether Plaintiffs have a colorable takings claim against the United States?

2. Whether Plaintiffs are limited to a review of the ABCA's administrative determination of their claims?

3. Whether Plaintiffs can pursue their claim for the interest that the FCIC allegedly offset against Plaintiffs, even though Plaintiffs may not have asserted this claim for interest before the ABCA?

**2.** Plaintiffs' filed their original Complaint on November 16, 2001. Defendants filed an original Motion to Dismiss on March 22, 2002. (Docket No. 17). After the case was reassigned to this Court on April 3, 2002, Plaintiffs responded to the original Motion to Dismiss on April 14th (Docket No. 21). Plaintiffs then filed an Amended Complaint on May 6, 2002 (Docket No. 24) and a Supplemental

Response to the Motion to Dismiss on May 10th (Docket No. 26). In light of the Amended Complaint, Defendants filed a Supplemental Motion to Dismiss (Docket No. 28), to which Plaintiffs responded in a Second Supplemental Response (Doc. 30). Defendants replied to Plaintiff's Second Response at Docket No. 33.

## II. Discussion

### A. Standard of Review

Motions to dismiss for failure to state a claim are "viewed with disfavor and rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The district court must assume that all material facts in the plaintiff's complaint are true and should not dismiss the complaint "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The *Collins* court summarized the inquiry as follows: " '[W]hether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.' " *Id.* (quoting CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCE-DURE § 1357, at 601 (1969)). The court should limit its review to the plaintiff's pleadings, including any attached documents. *Id.* It should not, generally, consider other evidence attached to the motion to dismiss. *Id.*

### B. Takings Claim

■ Plaintiffs do not have a colorable takings claim against the United States. Plaintiffs claim that the FCIC improperly set off the entire indemnity amount that Plaintiffs paid to the cotton farmers. This amount necessarily included not only the FCIC's portion of reinsurance payments, but also Plaintiffs' portion of indemnity payments. Thus, Plaintiffs maintain that they are entitled to their portion of the indemnity payments "irrespective [of] the outcome of [their] claim for breach of the SRA." (Docket No. 38 at 6, ¶ 14). Defendants are correct, however, that such claim does not differ from a breach of contract claim for improper offsets under the SRA.

1. Federal Law Provides a Remedy for Plaintiffs' Claim of Improper Offsets

The FCIC regulations provide an administrative avenue for insurance companies to challenge FCIC actions that are "not in accordance with the provisions of the Standard Reinsurance Agreement" and to appeal the FCIC's determinations with the ABCA. 7 C.F.R. § 400.169(a), (d); *see also* 7 U.S.C. § 6912(e) (requiring exhaustion of administrative appeals process). The statutes governing claims against the FCIC also provide for suit against the FCIC in district court and require that the FCIC indemnify insurance providers "due to errors or omissions on the part of the [FCIC]." 7 U.S.C. §§ 1506(d),1508(j).

■ A takings claim is inappropriate where it duplicates a breach of contract claim and a breach of contract remedy is available to the plaintiff. *Castle v. United States*, 48 Fed. Cl. 187, 218 (Fed.Cl.2000) *aff'd in part and rev'd in part, on other grounds*, 301 F.3d 1328 (Fed.Cir.2002). Regardless of the amount the FCIC improperly offset, and regardless of whether that amount came from reinsurance moneys or indemnity payments, the FCIC's action was allegedly "not in accordance with the SRA." The law thus allows Plaintiffs to recover the full amount of improper offset through a breach of contract challenge.

Moreover, it is difficult to see why Plaintiffs would want to characterize the improper offsets as a takings claim because any claims against the United States[3] in excess of $10,000 must be brought in the

3. The Plaintiff's claims may or may not be barred under the Federal Tort Claims Act; the cases do not address whether the notice requirement under the FTCA applies to con-stitutional claims. At least one case has held that the notice requirement does not apply to contract claims. *Shapex Corp. v. United States*, 629 F.Supp. 751, 752 (M.D.Ala.1985).

Court of Federal Claims. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). Judicial efficiency would not be served by severing the takings claim and transferring it to the Court of Federal Claims when the claim could be tried here in district court under the provisions allowing suits against the FCIC.

### 2. Plaintiffs' Constitutional Claim is Not Colorable

The Ninth Circuit has squarely addressed the propriety of filing a direct constitutional claim against the Department of Agriculture without first exhausting the administrative process. In *McBride Cotton and Cattle Corp. v. Veneman*, the Secretary of Agriculture offset farmers' debts by taking pro-rata shares of contract payments that the Department owed to non-debtor family members and shareholders. 290 F.3d 973, 976 (9th Cir. 2002). Before doing so, the Secretary gave notice only to the *debtors*, which the regulations required. *Id.* The plaintiff non-debtors claimed that the offsets and lack of notice deprived them of due process and filed a direct claim with the district court. *Id.*

The court considered whether the plaintiffs' due process claims constituted an exception to the requirement that they exhaust their administrative remedies.[4] Exhaustion is excused, the court concluded, only under the following circumstances: where the "suit alleges a constitutional claim which is '(1) collateral to a substantive claim of entitlement, (2) colorable, and (3) one whose resolution would

not serve the purposes of exhaustion.' " *Id.* at 980 (quoting its earlier case, *Hoye v. Sullivan*, 985 F.2d 990, 991 (9th Cir. 1992)). A claim is not colorable if it " 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial or frivolous.' " *Id.* Thus, a plaintiff cannot circumvent an exhaustion requirement by alleging a frivolous constitutional claim.

The court found that the plaintiffs' claims were collateral because they presented a facial challenge to the regulations (which did not require notice to non-debtors) rather than a challenge to the Secretary's application or interpretation of the regulations. *Id.* at 981. The claims were "colorable" because they alleged facts sufficient to state a due process violation and because the defendant denied the plaintiffs' earlier attempt to appeal the offsets, claiming that plaintiffs were not entitled to such appeal. *Id.* at 982. Finally, the court held that exhaustion would be futile because the National Appeals Division did not have the authority to resolve plaintiffs' claims. *Id.*

Conversely, Rain & Hail's "takings" claim does not fulfill this three-part test. Plaintiffs here complain that the FCIC's mishandling of their claims and the deficiencies in the procedures the FCIC followed in adjusting Plaintiffs' claims violated the SRA and the FCIA and regulations. Rain & Hail does not contend that the Federal Crop Insurance Act (FCIA) facially deprives it of a remedy. Plaintiffs' claim is also not colorable because it does

---

**4.** The court focused largely on the issue of whether the plaintiffs' claims were barred for failure to exhaust their administrative remedies. The court concluded that failure to exhaust was not a *bar* to federal jurisdiction unless the governing statute explicitly divests the court of jurisdiction. *Id.* at 979–980. The court found that 7 U.S.C. § 6912(e), which governs claims against Department of Agri-

culture, did not provide such a bar to jurisdiction. *Id.* Instead, exhaustion was simply a *requirement* under § 6912(e) that could be excused under the proper circumstances. *Id.* See also *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570 (5th Cir.2001) (addressing a different statute—the Aviation Act—but affirming the same principle regarding statutory exhaustion requirements).

not state facts that constitute a claim different from a breach of the SRA or statutory violation. Plaintiffs apparently alleged the takings claim in an attempt to have the facts of their case heard *de novo* by the Court. Finally, Plaintiffs have exhausted the administrative appeals process, so the exhaustion prong of the test is moot.

Because the Plaintiffs can obtain full relief through their breach of contract claim against the FCIC, their takings claim is dismissed.

### C. Administrative Review

Although the FCIA does not contain a standard of review clause, the weight of authority suggests that the Court should review the administrative record for abuse of discretion.

1. The RMA Can be Sued Along With the FCIC Under the Applicable Statutes.

Plaintiffs have named both the RMA and FCIC as Defendants and allege that, because the RMA is the successor agency to the FCIC, it should be subject to suit in district court under 7 U.S.C. § 1506(d).

Although the statute and regulations do not address Plaintiff's contention, the RMA's own website clearly indicates that it now administers the FCIA and that the FCIC is simply a division within the RMA. RMA Online, *at*

*http://www.rma.usda.gov/aboutrma.* After examining recent case law discussing the parity of the RMA and FCIC, the Southern District of Iowa also held that, because the RMA "has supervisory authority over the FCIC ... sections 1506 and 6912 apply equally to it." *American Growers Ins. Co. v. Federal Crop Ins. Corp.,* 2002 WL 1461889 at *5 (S.D.Iowa, June 26, 2002).

■ This Court is likewise persuaded that the RMA is equally subject to suits against the FCIC under 7 U.S.C. § 1506. Therefore, Plaintiffs may maintain both the FCIC and its supervising entity, the RMA, as named defendants in this suit.

2. The Court is Limited to a Review of the Administrative Record Under an Abuse of Discretion Standard.[5]

■ Plaintiffs contend that because 7 U.S.C. § 1506(d) confers "exclusive original jurisdiction" in the district courts for suits against the FCIC, the Court must necessarily review its claims *de novo*. Yet such position ignores the existence of 7 U.S.C. § 6912(e) and 7 C.F.R. § 400.169, which require parties to exhaust their claims against the FCIC. The *American Growers Ins. Co. v. FCIC* case concerned issues virtually identical to the instant case and the court there explained that § 1506(d) and § 6912(e) must be read together and in harmony. 2002 WL 1461889 at *2–3. Under such reading, these two

---

**5.** The Parties spend much time debating whether the standard of review in the Wunderlich Act, 41 U.S.C. § 321, applies. (See Docket No. 28 at 20–21; Docket No. 30 at 32–36). The Wunderlich Act applies to government contracts and sets forth an arbitrary and capricious standard of review. 41 U.S.C. § 321. Both *American Growers* and another unpublished order hold that SRAs are not standard government procurement contracts and so are not governed by the Contract Disputes Act (CDA). *American Growers Ins. Co. v. Federal Crop Ins. Corp.,* 2002 WL 1461889 at 4–5 (S.D.Iowa, June 26, 2002); *Rain and Hail Ins. Service, Inc. v. Honor,* 32 Fed. Appx. 544, 545, 2002 WL 539077 at *1 (Fed.Cir. 2002). The cases do not address whether the Wunderlich Act would govern the standard of review of SRAs. Although the Wunderlich Act arguably does not apply since SRAs are not governed by the CDA, the Court need not reach this question. The case law overwhelmingly directs that the APA's arbitrary and capricious standard should govern the review of the FCIC's determinations. Because this is the same standard the Wunderlich Act sets forth, the Parties' debate is rendered moot.

sections dictate that plaintiffs must exhaust their administrative remedies before bringing suit in federal district court. *Id.* While not reaching the precise standard for review, the court believed that Congress intended for "judicial review of plaintiff's claims within an administrative review context." *Id.* at *4.

The statute requiring exhaustion of administrative appeals to the Department of Agriculture and its agencies does not provide a standard of review. 7 U.S.C. § 6912(e). The Fifth Circuit directs that "[W]hen a statute authorizes judicial review of agency action without providing standards for that review, we look to the APA, 5 U.S.C.A. § 701 *et seq.*, for guidance." *Sierra Club v. Glickman,* 67 F.3d 90, 96 (5th Cir.1995). The Administrative Procedures Act (APA) limits the court to a review of the whole record and directs that the reviewing court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706.

Although *Sierra Club* involved the review standard under the Endangered Species Act, other Fifth Circuit cases have also applied the arbitrary and capricious standard in statutory contexts closer to that of the instant case. In a case involving a question of statutory interpretation under the Perishable Agricultural Commodities Act (PACA), the court invoked 5 U.S.C. § 706 in holding that the arbitrary and capricious standard would govern its review of the agency's decision and that it would "uphold an agency's factual findings if they are supported by substantial evidence." *Hawkins v. Agricultural Marketing Service Dept. of Agriculture, U.S.A.,* 10 F.3d 1125, 1128 (5th Cir.1993). It defined substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 1129 (citations omitted). The

court also employed an arbitrary and capricious standard to its review of the Agricultural Stabilization and Conservation Service's decision to deny disaster payments for crop losses to rice farmers. *Wilson v. United States Department of Agriculture,* 991 F.2d 1211, 1215 (5th Cir. 1993).

The Seventh Circuit came to the same conclusion regarding the standard of review for FCIC determinations. *Old Republic Ins. Co. v. Federal Crop Insurance Corp.,* 947 F.2d 269, 282 (7th Cir.1991). In holding that the APA's arbitrary and capricious standard governed, the court stated:

> The FCIA does not contain a standard of review for its administrative hearings, therefore, the standard of review set forth in the APA applies. This standard is whether the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' [citations omitted] ... When reviewing agency action under the arbitrary and capricious standard 'the court must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment.... The court is not empowered to substitute its judgment for that of the agency.' [citations omitted]. *Id.*

The Seventh Circuit found that the FCIC followed proper procedures in offsetting reinsurance payments pursuant to the SRA. *Id.* at 283.

The combined case law, then, appears to prescribe the following standard of review of FCIC/ABCA determinations:

1. The APA scope of review governs. *Sierra Club,* 67 F.3d at 96; *Old Republic Ins. Co.,* 947 F.2d at 282.

2. The court should review the FDIC/ABCA's decision under an arbitrary and capricious standard. *Sierra Club,* 67

F.3d at 96; *Old Republic Ins. Co.*, 947 F.2d at 282.

3. The agencies' factual determinations must be supported by substantial evidence. *Hawkins*, 10 F.3d at 1128.

4. Pure questions of law should be reviewed *de novo. Hawkins*, 10 F.3d at 1129; *Wilson*, 991 F.2d at 1215.

5. The court should employ the "Chevron Doctrine" to review the agencies' construction of a statute and must "give effect to the unambiguously expressed intent of Congress." *Hawkins*, 10 F.3d at 1129.[6]

Therefore, Plaintiffs can pursue judicial review of the claims that they already exhausted before the ABCA.

3. Even Under Administrative Review, Plaintiffs Can Recover Monetary Relief.

Plaintiffs seek reimbursement for the FCIC's allegedly improper offsets, as well as other relief provided by the statute governing suits against the FCIC. By borrowing the APA's scope of review under 5 U.S.C. § 706, the Court does not mean to suggest that the APA otherwise governs Plaintiffs' suit so as to limit their damages to equitable relief. The APA waives sovereign immunity for the United States and allows judicial review of an agency action when the party seeks relief "other than money damages." 5 U.S.C. § 702. Thus, a plaintiff seeking primarily monetary relief, as Plaintiffs do here, would not be able to obtain the immunity waiver and would, therefore, lack jurisdiction to sue under the APA. *Armendariz–Mata v. U.S. Dept. of Justice, Drug Enforcement Admin.*, 82 F.3d 679, 682 (5th Cir.1996); *Drake v.*

*Panama Canal Comm'n.*, 907 F.2d 532, 535 (5th Cir.1990).

Waiver of immunity under the APA is unnecessary here, however, where the statute governing Plaintiffs' claims clearly waives immunity as to the FCIC (and, by extension, the RMA, as discussed above). 5 U.S.C. §§ 1506, 1508(j). Section 1506(d) allows suits against the FCIC in district court "without regard to the amount in controversy" and does not place a limitation on the type of relief available. 5 U.S.C. § 1506(d). Section 1508(j) further provides for indemnification to insurance providers "including costs and reasonable attorney fees." 5 U.S.C. § 1508(j). Moreover, § 6912(e), which requires administrative exhaustion for claims against the FCIC, also places no limitation on the type of recovery available.

Thus, Plaintiffs may continue to pursue their requests for agency review and reimbursement against the FCIC/RMA. The cases cited above borrowed the standard of review from § 706 of the APA only because the specific administrative exhaustion provision (7 U.S.C. § 6912(e)) did not provide a standard of review. The Plaintiffs' claims are otherwise still governed by 5 U.S.C. §§ 1506 and 6912, which place no bar on the recovery of monetary relief.

*D. Interest Claim*

The FCIC also seeks to dismiss Plaintiffs' claim for improperly offset interest payments because Plaintiffs allegedly failed to exhaust their administrative remedies regarding the "interest" portion of their claim. The Court does not yet decide this question because the information

---

**6.** *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc* held that review of agency interpretations of statutory provisions involves a two-step process: First, if the court determines that the statutory provision is clear and "unambiguous" then the court must

apply the express provisions of the statute; Second, if the statute is ambiguous, then the court should uphold the agency's reasonable and plausible interpretation of the statute. 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

necessary to make a determination is not before the Court on Defendants' motion to dismiss.

When the court lacks clear information as to whether an issue was already addressed by the ABCA, or should have been brought before the ABCA, the court should not seek such information outside the pleadings on a motion to dismiss. *American Growers Ins. Co.*, 2002 WL 1461889 at 4. The information regarding whether the ABCA already addressed the facts and circumstances surrounding Plaintiff's claim for interest money lies in the administrative record, which Defendants filed with the Court after the August 13th hearing. Such information is not appropriate to consider on a motion to dismiss; it would be more appropriately addressed in a summary judgment motion. *Id.; Boudeloche v. Grow Chemical Coatings Corp.*, 728 F.2d 759, 762 (5th Cir.1984).

Because it is not clear that Plaintiffs have not already exhausted their interest claim before the ABCA, or whether such claim for interest must be separately exhausted, the Court cannot presently hold that the Plaintiffs have failed to state any valid claim for relief regarding their request for reimbursement of interest as well as principal. Defendants' request for dismissal of Plaintiffs' interest claim is, therefore, denied at this time.

### III. Conclusion

For the reasons stated above, the Court hereby:

1. Grants Defendants' Motion to Dismiss Plaintiffs' constitutional takings claim and the United States as a party;

2. Denies Defendants' Motion to Dismiss Plaintiffs' "interest" claim for failure to exhaust administrative remedies and directs the Defendants to re-urge such challenge in a later summary judgment motion when the Court will be at liberty to review the full administrative record.

The Court also Orders Plaintiffs to re-plead, within thirty days hereof, to conform to the Court's decisions. Plaintiffs, therefore, should amend their complaint to drop the United States and ABCA as parties and to recharacterize their claims for original jurisdiction and damages as a claim for review of the ABCA's decision and specific relief. The Court will review these claims under an arbitrary and capricious/abuse of discretion standard, limited to the administrative record of the ABCA decision.

The Court Orders Defendants to submit their answer within ten days of Plaintiffs' amended pleading. As the Court directed during the October 3rd, 2002 hearing, the Plaintiffs' brief on the merits of their case is due to the Court by December 20th, 2002 and Defendants' brief is due January 31st, 2003. Plaintiffs must submit their response brief by February 14th, 2003 and Defendants' reply will be due February 21st, 2003. The parties shall appear before the Court for a scheduling conference on February 25th, 2003 at 9:30am.