**FARMERS & MERCHANTS BANK OF EATONTON, GEORGIA, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 97–621C.**

United States Court of Federal Claims.

Feb. 16, 1999.

J. Littleton Glover, Jr., Glover & Davis, P.A., Newnan, GA, attorney of record for plaintiff.

Sean H. Lane, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Kathryn A. Bleecker, Assistant Director, Commercial Litigation Branch, David M. Cohen, Director, Commercial Litigation Branch and Frank W. Hunger, the Assistant Attorney General, attorneys of record for the defendant.

## OPINION

HORN, Judge.

The plaintiff, Farmers and Merchants Bank of Eatonton, Georgia, seeks damages for breach of a loan note guarantee issued by the United States Department of Agriculture, Farm Service Agency (FSA). Before filing this action, the plaintiff appealed the FSA's denial of their claim through the United States Department of Agriculture, National Appeals Division (NAD), which decided in favor of the FSA. The defendant filed a motion to dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), arguing that the Federal

Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, P.L. 103–354, codified at 7 U.S.C. § 6991 *et seq.* (1994 Reorganization Act), created a mandatory administrative appeals process, reviewable exclusively by the district courts, thus depriving the United States Court of Federal Claims of subject matter jurisdiction. The defendant's motion to dismiss is granted.

## FACTS

The relevant facts set out below are not in dispute. On March 3, 1994, the plaintiff, Farmers and Merchants Bank of Eatonton, Georgia (Farmers), loaned Stephen B. Sharp (Sharp) $208,000.00 (the larger loan). Sharp was the sole signatory on the Promissory Note. As collateral for this loan, the plaintiff obtained a first lien on a herd of dairy cattle, an assignment of milk proceeds, and equipment, as well as the "best lien available" on a one acre plot of land and two mobile homes. On July 13, 1994, the FSA issued a loan note guarantee on the larger loan for 90 percent of the total loan amount plus interest.

On March 3, 1994, the plaintiff also loaned Stephen B. Sharp, Kay H. Sharp (Sharp's Wife), and Tempy Irene D. Sharp (Sharp's mother) $140,000.00 (the smaller loan). The Promissory Note for the smaller loan was signed by all three borrowers. As collateral for the smaller loan, the plaintiff obtained a first lien on a variety of property, including the one acre parcel of land and two mobile homes designated as collateral on the larger loan. The smaller loan also was secured by a first lien on a 67.995 acre parcel of land owned by Tempy Irene D. Sharp. The FSA did not guarantee the smaller loan.

After both loans came into default, the collateral pledged as security for the larger loan was liquidated with the proceeds applied to reduce the loan sum. The remaining deficiency is $89,176.04 plus accrued interest of $11,711.99, totaling $100,888.03. Farmers made a loss claim to the FSA for 90 percent of the total, $90,799.22. The FSA denied the loss claim on the ground that Farmers' failure to cross-collateralize and subsequent refusal to liquidate the 67.995 acre tract of land secured as collateral on the smaller loan con-

stituted negligent servicing of the larger loan.

Farmers appealed FSA's denial of the loss claim to the NAD. In a decision dated June 12, 1997, the NAD Hearing Officer upheld the FSA's denial of Farmers' claim. Farmers then appealed the Hearing Officer's Decision to the NAD Director. In a decision dated August 12, 1997, the NAD Acting Director upheld the decision of the Hearing Officer.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, as amended, 28 U.S.C.A. § 1491 (West 1994 & Supp.1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

In the above-captioned case, plaintiff argues that the FSA's decision not to pay on the loan guarantee constitutes a breach of contract by the United States, which entitles it to money damages. The question before this court is whether the plaintiff's contract claim is within the jurisdiction of the United States Court of Federal Claims.

Farmers first contends that the NAD appeal process was not mandatory, and that the plaintiff had the option of pursuing the appeal process, filing a suit for money damages in the United States Court of Federal Claims, or both. Farmers correctly asserts that the Court of Federal Claims has general jurisdiction under the Tucker Act to adjudicate claims for money damages against the United States, and that this jurisdiction is made exclusive for monetary claims against the United States in excess of $10,000.00. 28 U.S.C. § 1491, 28 U.S.C. § 1346(a)(2) (1994). The United States contends, however, that the 1994 Reorganization Act created a mandatory administrative appeals process, the outcome of which may be appealed exclusively to the United States District Courts, thus, depriving the United States Court of Federal Claims of subject matter jurisdiction over this case. 7 U.S.C. § 6999 (1994).

■ The applicable statute, 7 U.S.C. § 6912(e), explicitly requires that a person exhaust all administrative appeal procedures established by the Secretary of Agriculture or required by law before the person may bring an action in a court of competent jurisdiction against the Department of Agricul-

ture. 7 U.S.C. § 6912(e) (1994). Moreover, 7 U.S.C. § 6991 *et seq.*, in an equally straightforward manner, sets out the applicable procedures for appealing an FSA decision. Absent a clearly expressed legislative intention to the contrary, the words of the statute are conclusive. *Hallstrom v. Tillamook County*, 493 U.S. 20, 28, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). In the instant case, the plain language of the statute demonstrates a clear legislative intent to require all parties dissatisfied with FSA decisions to exhaust the NAD appeals process, before filing suit in any court.[1]

■ When the Department of Agriculture reorganized, the newly enacted statutory chapter was introduced as follows:

The purpose of this chapter is to provide the Secretary of Agriculture with the necessary authority to streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department.

7 U.S.C. § 6901 (1994).

As part of the reorganization, the following functions were transferred to the new National Appeals Division:

There are transferred to the Division all functions exercised and all administrative appeals pending before the effective date of this subchapter (including all related functions of any officer or employee) of or relating to—

(1) the National Appeals Division established by section 1433e(c) of this title (as in effect on the day before October 13, 1994);

(2) the National Appeals Division established by subsections (d) through (g) of section 1983b of this title (as in effect on the day before October 13, 1994);

(3) appeals of decisions made by the Federal Crop Insurance Corporation; and

(4) appeals of decisions made by the Soil Conservation Service (as in effect on the day before October 13, 1994).

7 U.S.C. § 6993 (1994).

The statute also explicitly states: "A final determination of the Division shall be review-

---

1. Under 7 U.S.C. § 6999, the decision of the NAD Director is considered final agency action under the APA, so Farmers has exhausted all available administrative remedies.

able and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of title 5." 7 U.S.C. § 6999 (1994). The term "Division" is defined in the same chapter of Title 7 as, "The National Appeals Division established by this chapter." 7 U.S.C. § 6991(6) (1994).

The legislative history to the 1994 Reorganization Act clarifies which Department of Agriculture programs and activities are intended to fall under the jurisdiction of the new National Appeals Division:

Question 1. List each of the USDA programs and activities that will be appealable under the new National Appeals Division (NAD), which agency these programs and activities are currently under, and how appeals are now handled for them, including discrimination complaints by producers or borrowers?

Answer. The following constitutes the programs and activities that will fall within the new NAD, the agency such programs or activities currently are under, and how appeals currently are handled for these activities and programs:

(a) The loan, *loan guarantee*, and grant *programs currently contained within the Farmers Home Administration (FmHA)* and the Rural Development Administration *and proposed for inclusion in the Farm Service Agency;* the Rural Community Development Service; and the Rural Business and Cooperative Development Service, including farmer program loans, housing program loans, community and business program loans; and all grants administered by the above agencies. Appeals from these programs currently are handled by the National Appeals Staff of FmHA in accordance with the procedures set out at subpart B of 7 C.F.R. Part 1900.

(b) Administrative offsets under subpart C of 7 C.F.R.1951. Matters under this activity currently are within FmHA and appeals for this activity are handled by the National Appeals Staff of FmHA in accordance with the procedures set out at subpart B of 7 CFR Part 1900.

(c) Appeals from adverse determinations under the programs set forth in 7 CFR Chapters VII and XIV. Currently, these programs are administered by the Agricultural Stabilization and Conservation Service (ASCS) and the Commodity Credit Corporation (CCC) and appeals thereunder are handled by the National Appeals Division. ·

(d) Proceedings conducted under sections 12 and 25 of the United States Warehouse Act. Currently, proceedings under this activity are handled by ASCS in accordance with the procedures set out at subpart H of 7 CFR Part 1.

(e) Penalty reviews under the Agricultural Foreign Investment Disclosure Act of 1978. Presently, this activity falls under ASCS and reviews are conducted in accordance with the procedures set out at 7 CFR Part 781.

(f) Eligibility determinations for participation in the Conservation Reserve Program as authorized by Subtitle D of Title XII of the Food Security Act of 1985. This activity currently rests under the Soil Conservation Service (SCS), which conducts appeals in accordance with the procedures set out at 7 CFR Part 614.

(g) Compliance requirements of the highly erodible land and the wetland conservation provisions of Subtitles B and C, respectively, of Title XII of the Food Security Act of 1985. Currently, these programs fall under SCS, and appeals from compliance determinations are made by SCS in accordance with the procedures set out at 7 CFR Part 614.

(h) Appeals from the Great Plains Conservation Program. Presently, this program is within SCS. Appeals thereunder are determined by SCS in accordance with the procedures set out at 7 CFR Part 631.

(i) Appeals from the Rural Abandoned Mine Program. This program currently is within SCS, and appeals thereunder are heard by SCS in accordance with the procedures set out at subpart E of 7 CFR Part 632.

(j) Direct business appeals under the Federal Crop Insurance Program. This currently falls under the Federal Crop Insurance Corporation (FCIC). Appeals are determined by FCIC in accordance with

the procedures set out at subpart J of 7 CFR Part 400.

(k) Reinsured company appeals under the Federal Crop Insurance Program. Currently, FCIC administers this program, and these appeals are heard by FCIC in accordance with the procedures set out at 7 CFR 400.169.

Discrimination complaints by producers or borrowers are handled in accordance with the applicable departmental procedures set out at 7 CFR Parts 15, 15a, and 15b.

H.R.Rep. No. 103–714, Questions Submitted by Congressman Stenholm re the National Appeals Division and USDA Answers (1994) (emphasis added).

The legislative history also establishes which programs and activities are to be excluded from the jurisdiction of the National Appeals Division:

*Question 2.* List each of the programs and activities that will not be appealable under the new Division, with an explanation as to why they were not included. Similarly, do you anticipate retaining any existing USDA appeals procedures? If so, which ones, and why?

Answer. The following is a list of the principal categories of programs and activities that will not be appealable under the new NAD and the reasons for their exclusion:

(a) Discrimination complaints-a well-established and sufficient departmentwide appeal mechanism, under 7 CFR Parts 15, 15a, and 15b, already exists for these matters.

(b) Freedom of Information Act appeals-as [sic] well-established and sufficient departmentwide appeal mechanism, under subpart A of 7 CFR Part 1, already exists for these matters.

(c) Privacy Act appeals-as [sic] well-established and sufficient departmentwide mechanism, under subpart G of 7 CFR Part 1, already exists for these matters.

(d) Appeals under the programs listed in subpart H of 7 CFR Part 1—except for appeals under the United States Warehouse Act, these programs fall under the purview of agencies not covered by any of the proposed legislation on the establishment of the new NAD and, indeed, are programmatically distinguishable from those programs that will be covered by the new NAD.

(e) Appeals from cease and desist proceedings under section 2 of the Capper–Volstead Act-as a law enforcement activity, this activity is substantively different from those programs that will be covered by the new NAD. Moreover, a sufficient and well-established appeal mechanism currently exists within the broader context of regulations governing proceedings under the Capper–Volstead Act in subpart I of 7 CFR Part 1.

(f) Appeals from determinations made under the Program Fraud Civil Remedies Act of 1986-as a law enforcement activity, determinations under this activity are substantively different from the appeals that will fall under the new NAD. Further, a sufficient and well-established appeal mechanism currently exists for these appeals within the broader context of regulations generally governing Program Fraud Civil Remedies Act penalty assessments in subpart L of 7 CFR Part 1.

(g) Agency actions presently appealable to the Department of Agriculture Board of Contract Appeals-such actions directly relate to government procurement and are distinctly different from the program-based appeals that the new NAD is designed to handle a specific appeals process has been established by statute for the actions.

(h) Programmatic appeals arising under the current programs of the Forest Service-the volume of Forest Service appeals and their distinct programmatic nature dictate a separate mechanism for these programs.

(i) Appeals arising under the current programs of the Rural Electrification Administration (REA)-the REA programs, especially with respect to the program participants, are programmatically distinct from those programs that would fall under the new NAD.

With regard to the programs and activities falling within the purview of the new NAD, the existing USDA appeal structures that apply to appeals at the State, county, and local levels in large part, will be retained to ensure continued accessibility, convenience, informality, and expeditious response for program participants. In addition, those existing procedures applicable to programs and activities not covered by the new NAD also will be retained. In short, the scope of the appeals system we have proposed for the new NAD would include all appeals from decisions made under farm programs, farmer loan programs, and other producer-related programs carried out by the county-based USDA agencies, but would not include appeals made under other, unrelated USDA programs. We believe that expansion of the NAD's role beyond these parameters would create an extremely unwieldy mechanism for administrative appeals, and would substantially distort the purpose to be served by consolidating these producer-related and other similar appeals authorities into a single entity within the Department.

H.R.Rep. No. 103–714, Questions Submitted by Congressman Stenholm re the National Appeals Division and USDA Answers (1994). From the above, it is clear that the scope of the responsibilities assigned to the NAD was carefully thought through by its legislative framers. Therefore, for those programs assigned to the NAD, this court should not insert itself into the process.

In support of its position that the NAD process is not mandatory, Farmers cites the legislative history of the 1994 Reorganization Act which states, "With regard to matters that initially may be appealed to State or local entities, the client will have the option to enter the NAD appeal process upon receiving an adverse decision from the State or

local entity."[2] H.R.Rep. No. 103–714, Question 4. By its terms, the legislative history discussion cited by Farmers only applies, however, to "matters that may initially be appealed to State or local entities." *Id.* A loan guarantee with the FSA is not a matter that initially may be appealed to State or local entities; adverse decisions by the FSA are appealable directly to the NAD. H.R.Rep. No. 103–714, Question 1. Moreover, the legislative history discussion of the 1994 Reorganization Act cited provides, "With regard to matters the initial appeal of which is directly from the decisionmaker to the NAD, the client will enter to [sic] NAD appeal process...." H.R.Rep. No. 103–714, Question 4. The legislative history of the 1994 Reorganization Act demonstrates, therefore, that a client dissatisfied by a decision of the FSA must utilize the NAD appeals process.

Farmers next argues that, even if the appeals process is mandatory, the United States Court of Federal Claims may still exercise jurisdiction over its claim, since the relief sought in this court is for money damages. In essence, Farmers argues that because its present complaint, as plead, is a complaint for money damages, rather than a complaint seeking the reversal of the NAD determination, the complaint is not subject to the exclusive district court jurisdiction of 7 U.S.C. § 6999. The text and legislative history of the 1994 Reorganization Act demonstrate, however, that the district courts are intended as the exclusive recourse for a plaintiff dissatisfied with the outcome of the relevant mandatory appeals process. Congress empowered the NAD with exclusive authority to adjudicate disputes arising from USDA programs. 7 U.S.C. § 6993 (1994), H.R.Rep. No. 103–714, Question 4. NAD adjudication is determinative of the rights in issue and is binding upon the parties unless

---

**2.** The full text of Question 4 follows:

*Question 4.* How will the new appeals process work? More specifically, at what point would a client enter the process, and how will the appeal move through this process? ...

Answer. With regard to matters that initially may be appealed to State or local entities, the client will have the option to enter the NAD appeal process upon receiving an adverse deci-

sion from the State or local entity. "With regard to matters the initial appeal of which is directly from the decisionmaker to the NAD, the client will enter to [sic] NAD appeal process upon receiving notice of initial adverse decision from the decisionmaker...."

H.R.Rep. No. 103–714, Questions Submitted by Congressman Stenholm re the National Appeals Division and USDA Answers (1994).

**44**

reviewed and reversed by the designated court of competent jurisdiction. *See Deaf Smith County Grain Processors, Inc. v. Glickman,* 162 F.3d 1206, 1211 (D.C.Cir. 1998) (holding that "§ 6999 provides the district court with jurisdiction over all final determinations of the NAD."). In the case at bar, Congress has displaced Tucker Act jurisdiction in favor of another remedial scheme, namely, administrative review in the National Appeals Division and judicial review in a district court. 7 U.S.C. § 6999 (1994); *see Deaf Smith County Grain Processors, Inc. v. Glickman,* 162 F.3d at 1211; *see also Del–Rio Drilling Programs v. United States,* 146 F.3d at 1367 (Fed.Cir.1998) (holding that Congress is authorized to displace Tucker Act jurisdiction).

Finally, Farmers argues that dismissal would create an impenetrable dilemma: if the Court of Federal Claims dismisses this action for lack of subject matter jurisdiction, Farmers will re-file in United States District Court, which, plaintiff argues, will dismiss its claim under the Little Tucker Act because they seek monetary relief from the United States in excess of $10,000.00, leaving plaintiff with no available recourse. *Aulston v. United States* demonstrates that Farmers' argument is incorrect and not an automatic result. *See Aulston v. United States,* 823 F.2d 510, 512 (Fed.Cir.1987). In District Court, the *Aulston* plaintiffs sought money damages for an impermissible taking as well as judicial review of an adverse decision by the Bureau of Land Management. *Id.* The takings claim was dismissed for lack of subject matter jurisdiction under the Little Tucker Act because it was a claim for money damages in excess of $10,000.00, but the request for review of the agency action was dismissed not for lack of jurisdiction, but because the case was not ripe, as the *Aulston* plaintiffs had failed to exhaust all administrative remedies. *Id.* When the district court is vested by statute with review authority, the FSA commitment remains enforceable in the district court regardless of the $10,000.00 limit on other contract actions over which the United States Court of Federal Claims has jurisdiction.

## CONCLUSION

The 1994 Reorganization Act requires all parties dissatisfied with a decision of the FSA to pursue a mandatory administrative appeal to the NAD, which may be reviewed exclusively by the district courts. Thus, the United States Court of Federal Claims lacks subject matter jurisdiction over plaintiff's complaint. Accordingly, the defendant's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED,** and the plaintiff's complaint is dismissed.

**IT IS SO ORDERED.**