ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a Cigna Property & Casualty Insurance Company), Alliance Insurance Companies, American Agricultural Insurance Company, American Growers Insurance Company in Rehabilitation, Country Mutual Insurance Company, Farm Bureau Mutual Insurance Company of Iowa, Farmers Alliance Mutual Insurance Company, Great American Insurance Company, Hartford Fire Insurance Company, NAU Country Insurance Company, Producers Lloyds Insurance Company, and Rural Community Insurance Company,

v.

UNITED STATES.

No. 03–470C.

United States Court of Federal Claims.

March 31, 2004.

Michael Edward Tucci, Washington, DC, for the plaintiffs.

Jane W. Vanneman, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for the defendant. Kim Arrigo, Department of Agriculture, of counsel.

## OPINION

YOCK, Senior Judge.

The plaintiffs seek damages for an alleged breach of Standard Reinsurance Agreements ("SRA") between them, individually, and the Federal Crop Insurance Corporation ("FCIC"). The defendant filed a Motion to Dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") arguing: (1) section 1506(d) of the

Federal Crop Insurance Act ("FCIA") establishes exclusive and original jurisdiction in the federal district courts over the plaintiffs' claims, thus withdrawing this Court's Tucker Act jurisdiction, and (2) the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, codified at 7 U.S.C. §§ 6901–7014 (2000) ("1994 Reorganization Act"), created a mandatory administrative appeals process that is reviewable exclusively by the district courts, *id.,* §§ 6991–7002, thus depriving this Court of subject matter jurisdiction. The plaintiffs oppose the motion and, in the alternative, seek to transfer this case to the United States District Court for the District of Columbia.

### Background

The Federal Crop Insurance Act, codified as amended at 7 U.S.C. §§ 1501–1524 (2000), was passed as part of the New Deal legislation during the Great Depression to rescue and to preserve agriculture in an effort to restore it to its position of strength in the national economy. *See State of Kan., ex rel. Todd v. United States,* 995 F.2d 1505, 1507 (10th Cir.1993). The FCIA's express purpose is "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance * * *." 7 U.S.C. § 1502(a). As a means of serving that purpose, the Federal Crop Insurance Corporation was created pursuant to 7 U.S.C. § 1503 to regulate the crop insurance industry and is presently a wholly-owned Government corporation within the United States Department of Agriculture ("USDA"). The FCIC is authorized to issue insurance policies and to reinsure insurance policies that are issued by agents of independent companies and that comply with FCIC regulations. 7 U.S.C. §§ 1506, 1508. Pursuant to section 1507, Congress directed that, to the "maximum extent possible," crop insurance be offered through private insurance providers and reinsured (and regulated) by the FCIC. 7 U.S.C. § 1507(c). In the exercise of its authority, the FCIC provides approved insurance providers, such as ACE Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company), Alliance Insurance Companies, American Agricultural Insurance Company, American Growers Insurance Company in Rehabilitation, COUNTRY Mutual Insurance Company, Farm Bureau Mutual Insurance Company of Iowa, Farmers Alliance Mutual Insurance Company, Great American Insurance Company, Hartford Fire Insurance Company, NAU Country Insurance Company, Producers Lloyds Insurance Company, and Rural Community Insurance Company (collectively "the plaintiffs"), with crop reinsurance programs. Under this system, insurance providers, such as the plaintiffs, can sell and service eligible crop insurance contracts, and, provided that the language of the policies comply with FCIC regulations, the FCIC provides reinsurance under a Standard Reinsurance Agreement ("SRA").[1] Each of the plaintiffs entered into an SRA with the FCIC effective for the 1998 reinsurance year ("1998 SRA").[2]

Under the 1998 SRA, the FCIC reinsured a portion of the underwriting risk related to catastrophic risk protection insurance ("CAT") and other federal crop insurance policies issued by the plaintiffs. In addition to reinsurance rights, the SRA, for example, the 1998 SRA, includes provisions for specified subsidies and administrative fees and for the payment of loss adjustment expenses to the contracting insurance providers. Further, in addition to the mutual obligations and rights contained within the SRA, there are provisions permitting for suspension, termination, renewal, and replacement. As a governmental agency, the FCIA may undertake one or more of those actions with re-

---

1. The SRA is a financial assistance agreement setting forth the terms and conditions under which the FCIC will provide premium subsidy, expense reimbursement, and reinsurance on multiple peril crop insurance sold or reinsured by the FCIC and its implementing regulations. The SRA is not a standard Government procurement contract and so is not governed by the Contract Disputes Act ("CDA"). *Rain & Hail Ins. Serv., Inc. v. Federal Crop Ins. Corp.,* 229 F.Supp.2d 710, 715 n. 5 (S.D.Tex.2002); *American Growers Ins. Co. v. Federal Crop Ins. Corp.,* 210 F.Supp.2d 1088, 1093 (S.D.Iowa 2002).

2. The plaintiffs have attached a copy of the 1998 SRA to the First Amended Complaint. (Am. Compl.Exh. A.)

spect to the SRA where called for pursuant to statute or regulation.

The Secretary of Agriculture and the FCIC are authorized, pursuant to section 1516 of the FCIA, to issue such regulations as may be necessary to carry out the provisions of the chapter. These regulations are binding on the insureds, *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947), and the regulations set forth the terms of the crop insurance contracts. *See* 7 C.F.R. §§ 400.27–457.165. The SRA, the FCIC's regulations, like the statute itself, are subject to change.

Indeed, in the decades following its creation, the FCIA has been significantly expanded and remains "one of a panoply of government programs designed to encourage, by subsidy if necessary, the nation's agricultural business." *R & R Farm Enters., Inc. v. Federal Crop Ins. Corp.*, 788 F.2d 1148, 1154 (5th Cir.1986). Subsequent congressional enactments to the FCIA that have been signed into law and that have statutorily modified the crop insurance program include the Agricultural Research, Extension, and Education Reform Act of 1998, Pub.L. No. 105–185, 112 Stat. 523 ("ARE-ERA") and the Agricultural Risk Protection Act of 2000, Pub.L. No. 106–224, 114 Stat. 358 ("ARPA").

Subtitle C of Title V of the AREERA introduced reforms and spending cuts, such as reducing the level of reimbursement provided for companies' administrative costs, within the crop insurance program. Section 532 of the Act provided:

(a) ADMINISTRATIVE FEE FOR CATA-STROPHIC RISK PROTECTION.—Section 508(b) of the Federal Crop Insurance Act (7 U.S.C. 1508(b)) is amended by striking paragraph (5) and inserting the following:

"(5) ADMINISTRATIVE FEE.—

"(A) BASIC FEE.—Each producer shall pay an administrative fee for catastrophic risk protection in an amount equal to 10 percent of the premium for the catastrophic risk protection or $50 per crop per county, whichever is greater, as determined by the Corporation.

"(B) ADDITIONAL FEE.—In addition to the amount required under subparagraph (A), the producer shall pay a $10 fee for each amount determined under subparagraph (A).

"(C) TIME FOR PAYMENT.—The amounts required under subparagraphs (A) and (B) shall be paid by the producer on the date that premium for a policy of additional coverage would be paid by the producer.

"(D) USE OF FEES.—

"(i) IN GENERAL.—The amounts paid under this paragraph shall be deposited in the crop insurance fund established under section 516(c), to be available for the programs and activities of the Corporation.

"(ii) LIMITATION.—No funds deposited in the crop insurance fund under this subparagraph may be used to compensate an approved insurance provider or agent for the delivery of services under this subsection.

"(E) WAIVER OF FEE.—The Corporation shall waive the amounts required under this paragraph for limited resource farmers, as defined by the Corporation.".

(b) ADMINISTRATIVE FEE FOR ADDITIONAL COVERAGE.—Section 508(c)(10) of the Federal Crop Insurance Act (7 U.S.C. 1508(c)(10)) is amended—

(1) by striking subparagraph (A) and inserting the following:

"(A) FEE REQUIRED.—Except as otherwise provided in this paragraph, if a producer elects to purchase additional coverage for a crop at a level that is less than 65 percent of the recorded or appraised average yield indemnified at 100 percent of the expected market price, or an equivalent coverage, the producer shall pay an administrative fee for the additional coverage. The administrative fee for the producer shall be $50 per crop per county, but not to exceed $200 per producer per county, up to a maximum of $600 per producer for all counties in which a producer has insured crops. Subparagraphs (D) and (E) of subsection (b)(5) shall apply with respect

to the use of administrative fees under this subparagraph."; and (2) in subparagraph (C), by striking "$10" and inserting "$20".

(c) REIMBURSEMENT FOR ADMINISTRATIVE AND OPERATING COSTS.—Section 508(k) of the Federal Crop Insurance Act (7 U.S.C. 1508(k)) is amended by striking paragraph (4) and inserting the following:

"(4) RATE.—

"(A) IN GENERAL.—Except as provided in subparagraph (B), the rate established by the Board to reimburse approved insurance providers and agents for the administrative and operating costs of the providers and agents shall not exceed—

"(i) for the 1998 reinsurance year, 27 percent of the premium used to define loss ratio; and

"(ii) for each of the 1999 and subsequent reinsurance years, 24.5 percent of the premium used to define loss ratio.

"(B) PROPORTIONAL REDUCTIONS.—A policy of additional coverage that received a rate of reimbursement for administrative and operating costs for the 1998 reinsurance year that is lower than the rate specified in subparagraph (A)(i) shall receive a reduction in the rate of reimbursement that is proportional to the reduction in the rate of reimbursement between clauses (i) and (ii) of subparagraph (A).".

(d) LOSS ADJUSTMENT EXPENSES FOR CATASTROPHIC RISK PROTECTION.—Section 508(b) of the Federal Crop Insurance Act (7 U.S.C. § 1508(b)) is amended by adding at the end the following:

"(11) LOSS ADJUSTMENT.—The rate for reimbursing an approved insurance provider or agent for expenses incurred by the approved insurance provider or agent for loss adjustment in connection with a policy of catastrophic risk protection shall not exceed 11 percent of the premium for catastrophic risk protection that is used to define loss ratio.".

AREERA, 112 Stat. 523, at 581–83.

Subtitle A of Title I of the ARPA further amended the FCIA, and reduced the level of loss adjustment expenses payable to approved insurance providers from 11 percent to 8 percent. Section 103(d) of the Act provided:

(d) REIMBURSEMENT RATE CHANGE.— Section 508(b)(11) of the Federal Crop Insurance Act (7 U.S.C. 1508(b)(11)) is amended by striking "11 percent" and inserting "8 percent".

ARPA, 114 Stat. 358, at 366.

The responsibility for implementing these statutory changes fell upon the USDA, through the Risk Management Agency ("RMA"), and ultimately the FCIC as part of its administration of the crop insurance programs. It is undisputed that in order to implement the relevant statutory changes introduced by the AREERA and ARPA, the FCIC issued documents, each entitled an "Amendment" to the SRA.[3] The plaintiffs assert that they were threatened by the FCIC, with termination of the existing SRA for the next reinsurance year, into executing the amendments (Am.Compl.¶¶ 33, 35, 36, 38), or, as they put it in other words, that they were presented by the FCIC with a "take it or leave it" ultimatum (Am. Compl.¶¶ 34, 37). The plaintiffs state that these actions constituted unilateral and unlawful attempts to amend the 1998 SRA "despite the fact that its [the FCIC's] contractual right to terminate and renegotiate the SRA had expired." (Am.Compl.¶¶ 33–43.) They allege that the United States, through the FCIC, has deprived them of and has

---

**3.** That the plaintiffs and the FCIC entered into the 1998 SRA is not in dispute. It also is undisputed that for at least one or more of the 1998 through 2003 reinsurance years, each plaintiff was an approved insurance provider that wrote CAT and other federal crop insurance policies. The plaintiffs, however, argue that the 1998 SRA was automatically renewed, under its terms, since July 1, 1997, and thus has been continuously effective for the reinsurance years through June 30, 2003. The Government denies that assertion and argues that the SRA is a cooperative financial agreement and that the 1998 SRA was amended and renewed giving rise to a new SRA each reinsurance year. This conflict, while relevant to the plaintiffs' claims for breach of contract, is not determinative with respect to the issue of this Court's jurisdiction, which is the basis for the Government's pending Motion to Dismiss.

refused to honor their right to receive certain CAT fees and loss adjustment expenses to which they claim to be legally entitled under the 1998 SRA. (Am.Compl.¶¶ 39–42.)

The plaintiffs complain that the "FCIC has breached the 1998 SRA, causing substantial damages to plaintiffs, as a result of three legislative actions." (Am.Compl.¶ 24.) In Count I of the First Amended Complaint, the plaintiffs assert that the Government's refusal to allow them to retain certain CAT fees and to receive loss adjustment expenses, subsequent to the FCIC's implementation of the relevant statutory amendments, has constituted both a breach of the 1998 SRA as well as a breach of the implied covenant of good faith and fair dealing. Count II alleges that the Government, through the alleged breaches and "[b]y its refusal to honor the terms of the 1998 SRA," has been unjustly enriched. (Am.Comp.¶ 74.) The plaintiffs claim entitlement to monetary damages. (Am. Compl. Wherefore Cl.)

For the reasons set forth below, the defendant's Motion to Dismiss is hereby granted, and the plaintiffs' motion to transfer, pursuant to 28 U.S.C. § 1631, is hereby denied.

### Discussion

The defendant has filed a Motion to Dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. It argues that Congress withdrew the Court of Federal Claims' jurisdiction with respect to all claims involving the FCIC; therefore, its Motion to Dismiss should be granted because this Court lacks subject matter jurisdiction to hear the plaintiffs' claims. The defendant also argues that this Court lacks jurisdiction because the plaintiffs have failed to exhaust, in a timely manner, mandatory administrative remedies.

### A. Standard of Review

"The burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it." *McRae Indus., Inc. v. United States,* 53 Fed.Cl. 177, 179 (2002) (citing *Myers Investigative & Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1369 (Fed.Cir.2002)). This Court adheres to "the accepted rule that a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). For purposes of such a motion, the Court considers as true all facts alleged in the Complaint, including all attachments to the Complaint, and makes "all reasonable inferences in favor of the nonmovant." *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1169–70 (Fed.Cir.1995) (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim."). Further, "[t]he court will not accept as true allegations that are contradicted by facts * * * or by other allegations or exhibits attached to or incorporated in the pleading." *Thune v. United States,* 41 Fed. Cl. 49, 51 (1998) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1350, at 220–21 (2d ed.1990)). Within this legal context, the plaintiffs must satisfy their burden of establishing that jurisdiction exists by demonstrating through a preponderance of the evidence that jurisdiction exists in this Court. *See Newby v. United States,* 57 Fed.Cl. 283, 289 (2003).

In order for this Court to have jurisdiction over the plaintiffs' First Amended Complaint, the Tucker Act, 28 U.S.C. § 1491 (2000), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with

the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000).

The Tucker Act merely confers jurisdiction on this Court; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

The question before this Court is whether the plaintiffs' claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are within the jurisdiction of the United States Court of Federal Claims.

**B. Count I–Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

**1. Whether the Plaintiffs' Failure to Exhaust Administrative Remedies Bars This Court From Hearing Plaintiffs' Claims**

■ In general, exhaustion of administrative remedies is the rule, and waiver the exception, because exhaustion serves a myriad of purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and preventing the "frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency * * *." *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *see also Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir.1996). Exhaustion also allows the agency to develop the factual record of the case, which aids such judicial review as may be available. *See James v. United States Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137–38 (D.C.Cir.1987).

■ Two kinds of exhaustion doctrine are currently applied by the federal courts, and the distinction between them is pivotal. Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them. Common law (or "judicial") exhaustion doctrine, on the other hand, recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in federal court despite his abandonment of the administrative review process.

■ The Supreme Court has directed that "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (internal citations omitted). Under the FCIA, all administrative appeal procedures established by the Secretary of Agriculture or required by law must be exhausted before a lawsuit may be brought against the USDA or one of its agencies, such as the FCIC. 7 U.S.C. § 6912(e); *see Farmers & Merchants Bank v. United States*, 43 Fed.Cl. 38, 40 (1999). Section 6912(e) provides:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary;

(2) the Department; or

(3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e). Faced with unambiguous statutory language requiring exhaustion of administrative remedies, "[w]e are not free to rewrite the statutory text." *McNeil v. United States*, 508 U.S. 106, 111, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

■ The defendant argues that the plaintiffs' claims should be dismissed for failure to exhaust administrative remedies. Its argument is based upon section 6912(e) and section 1506 of the FCIA, the express terms of the 1998 SRA,[4] and USDA regulations 7

---

4. The defendant cites to Section V, General Provisions, Section L.1. of the 1998 SRA. (Pls.' App.

Ex. A at 27.) That provision states: "The Company may appeal any actions, finding, or deci-

C.F.R. § 400.169 and 7 C.F.R. § 24.4(b).[5] Faced with dismissal of their claims, the plaintiffs attempt to circumvent the exhaustion requirement. The plaintiffs do this in their response to the defendant's Motion to Dismiss by attempting to reframe the nature of their claims. They argue that because they are suing the United States, not the FCIC, the requirements of administrative exhaustion contained within the 1998 SRA and 7 C.F.R. § 400.169 are not controlling and thus do not deprive this Court of jurisdiction over their claims.[6] (Pls.' Opp'n at 6.) Specifically, the plaintiffs now claim that they "allege that the United States is liable for damages caused by breach of the SRAs that were legislatively mandated by Congress. The allegation is not that FCIC is liable for a breach by it as a party to the contract." (Pls.' Opp'n at 3; *see also id.* at 1–2, 6.) The plaintiffs' position, as they have reframed it, is as follows: The alleged breaches of the 1998 SRA arose from the FCIC's actions in implementing statutory changes introduced by Congress through the AREERA and the ARPA; therefore, the United States is directly liable for those alleged breaches.[7]

"In construing the true nature of a claim we [this Court] look[s] to the real underlying claim, not how the plaintiff frames it." *Puget Sound Energy, Inc. v. United States,* 47 Fed. Cl. 506, 510 (2000). The plaintiffs filed this suit alleging the 1998 SRA was breached. In their First Amended Complaint, the plaintiffs expressly identify the FCIC as the party defendant. (Pls.' Am. Compl. ¶¶ 59–61.)

---

sion of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169."

5. The Board of Contract Appeals ("BCA") of the USDA has jurisdiction over disputes involving the FCIC. 7 C.F.R. § 24.4. Specifically, 24.4(b) states that the BCA has jurisdiction over FCIC determinations "pertaining to standard reinsurance agreements under 7 CFR 400.169(d)." Section 400.169(d) provides: "Appealable final administrative determinations of the Corporation under paragraph (a) or (b) of this section may be appealed to the Board of Contract Appeals in accordance with the provisions of subtitle A, part 24 of title 7 of the Code of Federal Regulations." 7 C.F.R. § 400.169(d).

6. The plaintiffs fail to address directly the statutory exhaustion requirement of 7 U.S.C. § 6912(e). They argue, however, that section 1506(d) is also not applicable in their claims solely against the United States, and they will be allowed to incorporate that argument by reference with respect to section 6912(e). (*See* Pls.' Opp'n at 6.)

In support of their argument that administrative exhaustion is no bar to their claims, the plaintiffs also have submitted a Notice of Recent Supplemental Authority drawing the Court's attention to the decision of the United States Court of Appeals for the Eighth Circuit in *National Crop Insurance Services, Inc. v. Federal Crop Insurance Corp.,* 351 F.3d 346 (8th Cir.2003). That case, however, is inapposite. In *National Crop Insurance Services, Inc.,* the issue considered was whether or not exhaustion of administrative remedies was required before insurers could sue the FCIC for issuing a Manager's Bulletin that allegedly unlawfully changed crop insurance policy provisions (*not* provisions of the SRA) in violation of the FCIA, the APA, and various FCIC regulations. The Eighth Circuit concluded: "We read § 400.169 to require administrative appeals when a dispute between an insurance provider and the FCIC, pertains to coverage under a reinsurance contract. This is not such a dispute. *The Insurers do not allege that the Bulletin altered the terms of the reinsurance contract between Insurers and the FCIC.* Instead, the Insurers allege that the Bulletin unlawfully expands coverage under the *insurance contract* between the Insurers and the growers. The Insurers are asking for FCIC indemnification of their entire obligation to the growers under that insurance contract, a recovery that would exceed the reimbursement to which the Insurers would be entitled under the reinsurance contract had the FCIC not issued the Bulletin. We read nothing in § 400.169 which requires a dispute about whether the FCIC is liable for expanding the Insurers' liability under an insurance contract to be heard by the BCA before being brought to the district court. It is our view that the district court can properly exercise jurisdiction over disputes such as this." *National Crop Ins. Servs., Inc.,* 351 F.3d at 349 (first emphasis added) (second in original). In the instant case, the plaintiffs' claims rest upon allegations that specific FCIC actions unlawfully altered the terms of the reinsurance contract (the 1998 SRA) between them (the insurers) and the FCIC.

7. The plaintiffs do not allege that the acts of Congress (or of the FCIC) amounted to a taking. That claim if made, however, would not satisfy the plaintiffs' burden. A takings claim is inappropriate where it duplicates a breach of contract claim and a breach of contract remedy is available to the plaintiff. *Castle v. United States,* 48 Fed.Cl. 187, 218 (2000), *aff'd in part and rev'd in part, on other grounds,* 301 F.3d 1328 (Fed.Cir. 2002); *see Rain & Hail Ins. Serv.,* 229 F.Supp.2d at 713–14 (finding plaintiffs did not have a colorable takings claim against the United States where that claim did not differ from a breach of contract claim under the SRA).

They also assert that the *"FCIC* has breached the 1998 SRA, causing substantial damages to plaintiffs, as a result of three legislative actions." (*Id.* ¶ 24 (emphasis added)). Consistent with that assertion, the plaintiffs' allegations complain of, and allege that a breach of contract resulted from, the FCIC's actions in implementing the relevant portions of the AREERA and ARPA. The plaintiffs' argument that they need not exhaust administrative remedies or, for that matter, sue in the United States district court, because the FCIC is not a party fails. The 1998 SRA states expressly that it is a Standard Reinsurance Agreement between the FCIC and the insurer, and "is a cooperative financial assistance agreement between FCIC and the [insurer] to deliver eligible crop insurance under the authority of the Act." (Compl. Ex. A at 1.) Because this case involves an alleged breach of a FCIC contract, the plaintiffs may not ignore the terms of that contract, as well as the actor of whose direct actions they complain, and not name the FCIC. *Texas Peanut Farmers v. United States,* 59 Fed.Cl. 70, 73 (2003).

Despite the plaintiffs' suggestion that the FCIC is not the breaching party because Congress allegedly breached the 1998 SRA when it enacted the AREERA and the ARPA, the plaintiffs neither challenge the substantive provisions of AREERA (administrative fees) or ARPA (loss adjustment expenses), the power of Congress to enact or of the FCIC to implement those provisions, nor do they assert due process, taking, or any other violation of a constitutional right. Rather, the plaintiffs' claims are centered solely upon the FCIC's implementation of those statutory provisions, beginning in 1998 (administrative fees and loss adjustment expenses) and in 2000 (additional reduction in loss adjustment expenses). Although the Court is perhaps beating a dead horse at this point, it bears repeating that the plaintiffs allege that the FCIC's actions of amending, or attempting to amend, the 1998 SRA to require the plaintiffs to remit all administrative fees to the FCIC and to reduce the amount of loss adjustment expense paid for CAT policies and the subsequent failure of the FCIC to comply with the terms of the 1998 SRA constitute breaches of that contract. (Am.Compl.¶¶ 33–43, 65–68, 72–75.) The plaintiffs have neither specifically alleged nor have they shown, or provided evidence to suggest, that Congress mandated the way in which the FCIC should implement the relevant provisions of the AREERA or ARPA. Thus, they again fail to satisfy their burden of showing that this Court has jurisdiction over the instant action. For these reasons, the plaintiffs' attempt to circumnavigate the FCIA are misguided and will not land them within this Court's jurisdiction. Congress has expressly set out a statutory scheme that applies to suits, such as this one, that allege a breach of an SRA resulting from the actions of the FCIC.

This Court already has examined the applicability of 7 U.S.C. § 6912(e) in a suit brought against the United States in which the plaintiff asserted a breach of contract claim allegedly resulting from the actions of an agency of the United States Department of Agriculture. *Farmers & Merchants Bank,* 43 Fed.Cl. at 38. In *Farmers & Merchants Bank,* a bank sought damages for an alleged breach of a loan note guarantee issued by the Farm Service Agency ("FSA") of the Department of Agriculture. The Court found that § 6912(e) was applicable and held that the bank was required to seek administrative review by the USDA National Appeals Division ("NAD") and could then seek judicial review in a district court. *Id.* at 38. The Court's analysis included a detailed summary of the numerous administrative and judicial routes by which various types of persons who participate in the USDA's programs may seek review of the Government's actions and must exhaust the administrative remedies applicable to their particular programs. These programs include the one under the FCIC in which the plaintiffs in the instant case participated. *Id.* at 40–42. Just as those plaintiffs in *Farmers & Merchants Bank,* the plaintiffs here also must exhaust the particular remedies set forth in the 1994 Reorganization Act.

As a last ditch effort to clear the hurdle of their failure to exhaust established administrative remedies, the plaintiffs argue, in the alternative, that their claims fall within judicial exceptions to the statutory and regulato-

ry requirement of administrative exhaustion. They argue that waiver of the exhaustion requirement would be merited because: (1) administrative remedies would be futile, (2) administrative remedies would provide inadequate relief, and (3) the agency has adopted a policy or practice of general applicability that is contrary to law. (Pls.' Opp'n at 6–8) (citing *Urban v. Jefferson County School Dist. R–1*, 89 F.3d 720, 724 (10th Cir.1996); *Bryan v. Office of Pers. Mgmt.*, 165 F.3d 1315, 1319 n. 4 (10th Cir.1999); *Utah Shared Access Alliance v. Wagner*, 98 F.Supp.2d 1323, 1333 (D.Utah 2000)).

As previously noted, the Supreme Court has directed that "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy*, 503 U.S. at 144, 112 S.Ct. 1081 (internal citations omitted). Indeed, only where there is no explicit statutory exhaustion requirement may courts exercise discretion and "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146, 112 S.Ct. 1081; *see also id.* at 152, 112 S.Ct. 1081 ("Because Congress has not required exhaustion * * * we turn to an evaluation of the individual and institutional interests at stake in this case.") (emphasis omitted); *see Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998); *Portela–Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir.1997).

■ In other words, if Congress has not explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative ex-

haustion under certain circumstances.[8] But the statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit.[9] Congress' intent in enacting the FCIA was to require plaintiffs to exhaust all administrative remedies before bringing suit. *Bastek*, 145 F.3d at 93–95; *American Growers Ins. Co. v. Federal Crop Ins. Corp.*, 210 F.Supp.2d 1088, 1091–93 (S.D.Iowa 2002) ("When section 1506 and 6912 are read together, the Court finds Congress intended for judicial review of plaintiff's claims in an administrative review context." *Id.* at 1093.).

Accordingly, because the various exceptions to exhaustion urged by the plaintiffs do not apply where, as here, a clear statutory exhaustion requirement exists, the plaintiffs' arguments relying on these exceptions are unavailing. *See, e.g., Bastek*, 145 F.3d at 93–95.

Finally, to the extent that the plaintiffs seek restitution incident to their claim for breach of contract, the Court has no jurisdiction to entertain the merits because it lacks jurisdiction over the plaintiffs' underlying breach of contract claim. *See, e.g., Collins v. United States*, 209 Ct.Cl. 413, 424–25, 532 F.2d 1344, 1351 (1976).

2. Whether 7 U.S.C. § 1506(d) Bars This Court From Hearing Plaintiffs' Claims

■ The defendant asserts that Congress, pursuant to section 1506(d), expressly granted the federal district courts with exclusive original jurisdiction over all claims involving the FCIC, no matter what amount is in controversy, and thereby withdrew this Court's Tucker Act jurisdiction. It thus argues that this Court must dismiss the plain-

---

8. As noted by the *Bastek* court, "[s]uch circumstances may occur when: (1) requiring exhaustion would 'occasion undue prejudice to subsequent assertion of a court action'; (2) the administrative remedy is inadequate because the agency cannot give effective relief, *e.g.,* (a) 'it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute'; (b) the challenge is to 'the adequacy of the agency procedure itself'; or (c) the agency 'lack[s] authority to grant the type of relief requested'; or (3) the agency is biased or has predetermined the issue (also known as 'futility'). *McCarthy*, 503 U.S. at 146–48, 112 S.Ct. 1081; *Swirsky v. Na-*

*tional Ass'n of Sec. Dealers*, 124 F.3d 59, 63 (1st Cir.1997). Other circumstances potentially giving rise to a waiver of exhaustion occur when (4) 'the claim is collateral to a demand for benefits,' or (5) 'plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies.' *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir.1992)." *Bastek*, 145 F.3d at 94 n. 4.

9. The relevant federal regulation, 7 C.F.R. § 400.169, also requires parties to exhaust administratively their claims against the FCIC.

tiffs' claims for lack of subject matter jurisdiction. As previously noted, the plaintiffs argue that section 1506(d) is inapplicable because they have not sued the FCIC (Pls.' Opp'n at 3), and that this Court has, if not exclusive, then at least concurrent jurisdiction over their claims pursuant to the Tucker Act, 28 U.S.C. § 1491 (*id.* at 2, 4–5).

While this Court has found that it lacks subject matter jurisdiction over the plaintiffs' First Amended Complaint as a result of their failure to pursue mandatory administrative review and appeal, thereby exhausting their remedies, it also believes that 7 U.S.C. § 1506(d) would bar it from hearing the plaintiffs' claims.

The FCIA provides:

The Corporation [the FCIC], subject to the provisions of section 1508(j) of this title, may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the [FCIC] or its property. The district courts of the United States, including the district courts of the District of Columbia and of any territory or possession, *shall have exclusive original jurisdiction*, without regard to the amount in controversy, of all suits brought by or against the [FCIC] * * *. Any suit against the [FCIC] shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.

7 U.S.C. § 1506(d) (emphasis added).

Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Congress may, however, withdraw the Tucker Act grant of jurisdiction. *See, e.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–19, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

Section 1506(d) states that the federal district courts "shall have" jurisdiction of claims brought against the FCIC "without regard to the amount in controversy, of all suits brought by or against the [FCIC]." This Court believes that as a matter of statutory interpretation, section 1506 grants the district courts exclusive jurisdiction over claims against the United States alleging breach of an SRA resulting from actions of the FCIC.[10] *See Leach v. Federal Crop Ins. Corp.*, 741 F.2d 200, 201 (8th Cir.1984) ("FCIC's enabling legislation provides for exclusive jurisdiction of United States district courts over all litigation involving FCIC, 7 U.S.C. § 1506(d) * * *"). In light of the express language of section 1506(d), the Court declines to adopt the plaintiffs' interpretation that, with respect to SRA-based contract claims against the United States, there exists concurrent jurisdiction in both this and the federal district courts. (Pls.' Opp'n at 5.)

In addition, the plaintiffs' attempt to avoid the application of section 1506(d) by pointing to the fact that they have named the United States, rather than the FCIC, as the party defendant in this action is unpersuasive. Again, the claims in their First Amended Complaint center upon a breach of contract action and are based upon the allegedly unlawful actions of the FCIC in implementing statutory amendments to the FCIA. For this reason, the Court believes that section 1506(d) would apply also to bar it from hearing the plaintiffs' claims as pleaded in the instant action. 7 U.S.C. § 1506(d); *see generally Texas Peanut Farmers*, 59 Fed.Cl. at

---

10. The Court notes the plaintiffs' complaint that the Government has argued that, in actions filed within the federal district courts, breach of SRA cases belong in this Court. (Pls.' Opp'n at 3–4, *citing Rain & Hail Ins. Serv.*, 229 F.Supp.2d at 712; *American Growers Ins. Co.*, 210 F.Supp.2d at 1088, 1093). While the Court frowns upon the Government's disingenuous and theoretically-bankrupt practice of moving for dismissal for lack of subject matter jurisdiction in various courts based upon inconsistent and contradictory statutory arguments, which are in effect attempts to whipsaw plaintiffs in SRA-related actions against the FCIC, this Court cannot ignore the relevant statutory and regulatory requirements. This Court continues to believe that plaintiffs with these types of claims will not be deprived of their right to seek redress before a federal court. *Accord Farmers & Merchants Bank*, 43 Fed.Cl. at 44.

72–73 (holding this Court did not have subject matter jurisdiction to hear a breach of an FCIC contract claim brought by farmers where contract expressly made the FCIA requirements applicable); *Farmers & Merchants Bank*, 43 Fed.Cl. at 44 (concluding FCIA statutory scheme was applicable in suit against United States alleging unlawful action of agency within USDA and concluding review of the administrative procedures was within the exclusive jurisdiction of the federal district courts).

### C. Count II—Unjust Enrichment

■ The plaintiffs argue that "[a]t all times pertinent to this suit, [they] have each performed their obligations to sell and service CAT policies to producers of agricultural commodities under the continuously effective 1998 SRA." (Am.Compl.¶ 71.) They assert that the United States breached that express contract and, by refusing to honor the terms of the SRA, that it has been unjustly enriched. (*Id.* ¶¶ 72–74.) Based upon these assertions, the plaintiffs claim entitlement to "restitution of all benefits which they have conferred upon the United States through the 1998 SRA." (*Id.* ¶ 75.)

The plaintiffs' claim of unjust enrichment, however, also is beyond this Court's jurisdiction. Contracts implied in law, as opposed to those implied in fact, do not fall under the Tucker Act. *Hercules, Inc. v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998). Claims brought solely on the theory of unjust enrichment are thus not within the Court's jurisdiction. *E.g., Westfed Holdings, Inc. v. United States*, 52 Fed.Cl. 135, 149 (2002); *Centex Corp. v. United States*, 49 Fed.Cl. 691, 712 (2001). As such, this Court has no jurisdiction over Count II, and it also must be dismissed.

Even if the plaintiffs were to contend, which they have not, that this Court has jurisdiction over Count II under the theory that unjust enrichment could be brought in the instant case as an implied-in-fact contract claim, the undisputed existence of an express contract between the parties, the 1998 SRA, would cause that argument to fail. Indeed,

there is no implied-in-fact contract upon which the plaintiffs can stake their claim for recovery.

Although it is undisputed that the Court of Federal Claims has no jurisdiction over implied-in-law contracts, *Hercules*, 516 U.S. at 423, 116 S.Ct. 981, the Court does have jurisdiction over implied-in-fact contracts under the Tucker Act. *See id.; Gould, Inc. v. United States*, 67 F.3d 925, 928 (Fed.Cir.1995). An implied-in-fact contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923) (citation omitted). In other words, an implied-in-fact contract arises when all of the elements of an express contract are present, *except* a written document. *Northrop Grumman Corp. v. United States*, 47 Fed.Cl. 20, 41 (2000) (emphasis added). " 'The existence of an express contract precludes the existence of an implied contract dealing with the same subject * * *.' " *Id.* at 41 (quoting *Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed.Cir.1990)). It is undisputed that the parties to the present litigation entered into an express contract, the 1998 SRA, on the exact subject that is the topic of this case. The existence of the 1998 SRA precludes the finding of an implied-in-fact contract upon which the plaintiffs may have sought restitution under a theory of unjust enrichment.

### D. Plaintiffs' Motion to Transfer

The plaintiffs request, for the first time in their Opposition to Defendant's Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction, that this action be transferred to the United States District Court for the District Columbia pursuant to 28 U.S.C. § 1631 if this Court found that it lacks jurisdiction. (Pls.' Opp'n at 8.) The defendant opposes that request. It argues that a transfer would not be in the interests of justice, as required by § 1631, because the plaintiffs have not exhausted their administrative remedies, and therefore, they could not have brought this action in a federal district court " 'at the time

it was filed' " in this Court. (Def.'s Reply at 20.)

Having determined that this Court lacks jurisdiction over the plaintiffs' claims, the Court must decide whether to dismiss or to transfer the case. If the Court finds jurisdiction lacking as a matter of law, dismissal is required. *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868); *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985). But when it is in the interest of justice, a court shall transfer a case. 28 U.S.C. § 1631 (2000);[11] *Omega World Travel, Inc. v. United States,* 9 Cl.Ct. 623, 628 (1986). "Whether a case should be transferred to a district court lies within the sound discretion of the court." *Busby School of N. Cheyenne Tribe v. United States,* 8 Cl.Ct. 588, 595 (1985). Pursuant to 28 U.S.C. § 1631 (1994), three factors must be present to transfer a case: (1) the transferring court must lack jurisdiction, (2) the case must be one that could have been brought in a federal district court at the time of the filing, and (3) the transfer must be in the interest of justice. *Jackson v. United States,* 10 Cl.Ct. 691, 695 (1986).

As such, a transfer presumes jurisdiction in the transferee court. 28 U.S.C. § 1631; *Omega,* 9 Cl.Ct. at 626. It is far from clear that the federal district court would be able to entertain the plaintiffs' claims as a result of the plaintiffs' failure to first exhaust mandatory administrative remedies. For that reason, the Court believes transfer would be inadvisable. It therefore concludes that transfer would not be in the interests of justice and, accordingly, denies the plaintiffs' motion to transfer.

## CONCLUSION

The plaintiffs have failed to exhaust the mandatory administrative review and appeal process, which would then have been reviewed exclusively by a federal district court. Thus, this Court lacks subject matter juris-diction over the plaintiffs' First Amended Complaint. Accordingly, the defendant's Motion to Dismiss pursuant to Rule 12(b)(1) is GRANTED, and the plaintiffs' First Amended Complaint is to be dismissed. Further, the plaintiffs' motion to transfer is DENIED.

The Clerk is hereby directed to dismiss the Plaintiffs' First Amended Complaint, and judgment is to be entered accordingly.

No costs.

---

11. The statute provides: "Whenever a civil action is filed in a court * * * and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action * * * to any other such court in which the action * * * could have been brought at the time it was filed or noticed, and the action * * * shall proceed as if it had been filed in * * * the court to which it is transferred on the date upon which it was actually filed in * * * for the court from which it is transferred." 28 U.S.C. § 1631.